# EXHIBIT D

# ENGAGEMENT LETTER

BRIDGE ASSOCIATES LLC

747 Third Avenue
Suite 32A
New York, NY 10017
212-207-4710
212-207-9294 fax

www.bridgellc.com

September 29, 2008



BRIDGE ASSOCIATES LLC
New York Cleveland Naples Houston

John Scheurer
Chief Executive Officer
Ciena Capital LLC
1633 Broadway
New York City, NY 10019

Re: Ciena Capital LLC

Dear Mr. Scheurer:

This letter agreement (the "Agreement") confirms the engagement of Bridge Associates, LLC ("Bridge") by Ciena Capital LLC and its affiliates or subsidiaries[1] ("Ciena" or the "Company") from September 26, 2008, on the terms and conditions set forth herein, to provide financial and operational advisory services to Ciena in connection with the Chapter 11 bankruptcy cases which Ciena anticipates filing in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (the "Engagement"). In connection with the Engagement, Bridge shall report to the Board of Directors of Ciena (the "Board") and shall work with the Chief Executive Officer ("CEO") to carry out the tasks covered by the Engagement.

    1.    Tasks. Bridge's work may include but not be limited to the following:

---

[1] Ciena Capital LLC f/k/a Business Loan Express LLC; Business Loan Center, LLC; Ciena Capital Funding LLC f/k/a BLX Capital, LLC; BLX Capital Real Estate, LLC; BLX Capital Real Estate (Berlin), LLC; BLX Commercial Capital, LLC; BLX Commercial Capital Real Estate, LLC; BLC Real Estate, LLC; BLC Real Estate (Texas), LLC; BLC Real Estate (UPC Petroleum), LLC; BLX Holdings Corp

1

a. assist Ciena to gather and organize such information as required to prepare "first day" pleadings in connection with the filing of Ciena's petitions in bankruptcy;

b. work with Ciena's staff to ensure that monthly operating reports required to be filed with the Bankruptcy Court are completed and timely filed;

c. work with Ciena's staff to ensure that Ciena's Statements of Financial Affairs ("SOFA") and Schedules are prepared and timely filed (each of 11 debtors);

d. assist Ciena in complying with other reporting requirements under the Bankruptcy Code, the Bankruptcy Rules and the operating guidelines for bankruptcy trustees as promulgated by the Office of the United States Trustee (the "U.S. Trustee");

e. assist Ciena in communicating with the U.S. Trustee regarding monthly operating reports and related matters;

f. assist Ciena with the identification of supporting information needed to collect outstanding loan balances as well as working with attorneys acting on behalf of Ciena in regard to such loan balances;, and

q. perform other necessary services and provide such other advice to Ciena in connection with its bankruptcy cases as customarily provided by a financial advisor in connection with a bankruptcy advisory representation, as is requested by Ciena and agreed to by Bridge.

2. <u>Work Product</u>. Our work product will consist of:

- The services described above.

- Information to be discussed with the Company, Management, and the Board.

3. <u>Staffing</u>. Anthony H.N. Schnelling will be the Managing Director responsible for the Engagement. He will be assisted by, Frederick Kraegel, a Senior Consultant to Bridge, Michael Newsom, a Director of Bridge and Ilene Belongia, a Consultant to Bridge. They may be assisted by other Bridge professionals, who possess skills and abilities appropriate to the Engagement. Bridge and its professionals involved in the Engagement shall be independent contractors, shall be considered to be Bridge staff for the purposes of the Engagement, and shall not be considered or deemed to be officers or employees of Hunton & Williams LLP ("Hunton") or the Client.

4. Fees and Expenses

a. The Company will deliver to Bridge a retainer in the amount of $150,000 (one hundred and fifty thousand dollars and no cents) (the "Retainer"), payable by the Company upon the execution of this Agreement.[2] Bridge will hold the Retainer in its segregated client account until drawn. Bridge will draw against the Retainer prior to the Petition Date so that it is paid in full and is not a creditor of the estate and remains disinterested. It is the intention of the parties to ensure that Bridge shall not be the recipient of any funds from the Company which could constitute a preferential transfer potentially avoidable under applicable federal, state and/or local statutes. Accordingly, the parties hereto agree that, notwithstanding anything provided elsewhere in this Agreement, Bridge shall be entitled to draw against the Retainer to prevent the occurrence of an avoidable preference. At the termination of the Engagement, any monies remaining in the Retainer shall be promptly refunded to the Company.

b. Professionals at various levels may staff this Engagement, as the tasks require, insuring the greatest effectiveness while achieving maximum cost efficiencies. For the purposes of billing for the Services provided, Bridge's fees will be based on the hours charged at our hourly rates, which range as follows:

| | |
|---|---|
| Managing Directors and Senior Consultants | $350.00 - $600.00 |
| Principals and Directors | $275.00 - $425.00 |
| Associates and Consultants | $200.00 - $275.00 |
| Para-professionals | $125.00 |

Mr. Schnelling's hourly billing rate is $600.00 per hour, Mr. Kraegel's rate is $575.00 per hour, Mr. Newsom's rate is $425.00 per hour and Ms Belongia's rate is $300.00 per hour. Bridge agrees to cap its fees at $150,000 per month provided that the scope of the Engagement is not expanded beyond that contemplated in this Engagement Letter. In the event that Bridge does not exceed the $150,000.00 maximum allowed

---

[2] The Company will wire the Retainer to Hunton. Upon receipt of the Retainer, Hunton will forward same to Bridge.

3

monthly amount in any one month, any remainder may be carried forward to subsequent months that have bills below $150,000.00 so as to increase the maximum allowed monthly amounts for those months up to $150,000.00. In the event that Bridge exceeds the $150,000.00 maximum allowed monthly amount in any one month, the excess amount will be paid in one or more subsequent months where Bridge's fees are less than $150,000.00. Thus, Ciena shall never pay more than $150,000.00 to Bridge in any one month. In the event that the Debtors request that Bridge perform tasks in addition to those contemplated under the terms of this Engagement, Bridge and the Debtors may seek approval from the Court to expand the scope of Bridge's representation of the Debtors as well as the $150,000.00 monthly fee cap. Bridge does not charge for time spent by its professionals traveling to or from their place of residence in connection with the Engagement unless they are actually engaged in working on the Engagement during such travel time. Bridge periodically reviews rates charged for our services and makes appropriate adjustments. We will notify you of any changes to our rates, provided that no rate changes or adjustments will be made or become effective before January 1, 2009. Please note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

        c.      In addition to the professional fees of Bridge, the Company shall pay directly or reimburse Bridge for all reasonable, necessary and appropriate out-of-pocket and incidental expenses incurred in connection with this matter such as travel at coach rates, lodging at economy hotels, postage, telephone, and facsimile.

        d.      At least once per month, Bridge will provide the Company with a detailed statement of the fees charged (including an itemized description of the time spent by each Bridge person billing time on the Engagement) and expenses incurred in relation to the Engagement (the "Billing Statement"). Bridge professionals bill in tenths of an hour and our statements reflect that practice. Bridge, the Company, and the Board will work in good faith to resolve any disputes over charges in the Billing Statements.

        e.      Notwithstanding the foregoing, Bridge shall apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the guidelines established by the U.S. Trustee, for all services performed and expenses incurred after the Petition Date.

        5.      **Timing and Conditions.** Bridge is prepared to commence working on the Engagement immediately following receipt of an executed copy of this Agreement and the Retainer. It is understood that the Engagement of Bridge and the effectiveness of such Engagement is subject to, and contingent upon, the Bankruptcy Court approving our retention. Ciena agrees to move promptly to

4

place an application seeking approval of such retention before the Bankruptcy Court and to diligently prosecute approval of such retention by the Court on the terms and conditions set forth in this Agreement

      6      Indemnification. Ciena hereby agrees to indemnify and hold harmless Bridge, its officers, members, principals, employees, affiliates, independent contractors and their respective directors, officers, agents and employees (collectively, the "Indemnified Persons") from and against any and all claims, demands, suits, proceedings, judgments, awards, liabilities, losses, damages, and expenses incurred by any Indemnified Person (including but not limited to any Indemnified Person's reasonable counsel fees and disbursements and the reasonable costs of such Indemnified Person's professional time, such professional time will be reimbursed at our rates in effect when such time is required), as they are incurred, arising in connection with investigating, preparing for, or defending any action, formal or informal claim, investigation, inquiry or other proceeding, whether or not in connection with pending or threatened litigation) which are related to or arise in any manner out of the Engagement, including any legal proceeding in which any Indemnified Person may be required or agree to participate, but in which such Indemnified Person is not a party; provided, however, that the Indemnified Persons shall be indemnified only to the fullest extent permitted by the laws of the State of New York regarding acts and omissions of officers and directors of corporations incorporated under the laws of that State; provided further, however, that in no event shall any of the Indemnified Persons be indemnified for gross negligence or willful misconduct as determined by final order of a court of competent jurisdiction

     Bridge shall defend, or may permit Ciena to defend, any such claim, with counsel reasonably acceptable to Bridge. Ciena further agrees that it shall not, without the prior written consent of the Indemnified Persons, which shall not be unreasonably withheld, settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder unless such settlement, compromise or consent includes an unconditional release of Bridge and each other Indemnified Person hereunder from all liability arising out of such claim, action, suit or proceeding. Bridge further agrees that it shall not, without the prior written consent of Ciena, which shall not be unreasonably withheld, settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder.

      7      Confidentiality. Bridge acknowledges that it is being engaged by Ciena and that it shall keep confidential all non-public information obtained from Ciena or its professionals. Bridge agrees that neither it nor its officers, members, principals, affiliates, independent contractors and their respective directors, officers, agents and employees or attorneys (the "Confidential Parties") will disclose to any other person or entity, except to agents of Ciena, or use for any

5

purpose other than as specified herein, any information pertaining to Ciena which is either non-public, confidential or proprietary in nature ("Information") which it obtains or is given access to during the performance of the Services provided for hereunder. In addition, the Information does not include information which (a) is or becomes generally available to the public other than as a result of a disclosure or other breach of an obligation by the Confidential Parties, (b) was available to the Confidential Parties on a non-confidential basis prior to its disclosure to the Confidential Parties pursuant to this letter agreement, or (c) becomes available to the Confidential Parties on a non-confidential basis from a source other than Ciena, provided that the source is not bound by an obligation of confidentiality to Ciena in connection with this Engagement.

Should the Confidential Parties be requested or required, by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand, court order or other process issued by a court of competent jurisdiction or any federal or state agency or administrative review board to which the Confidential Parties are or may be subject, to disclose any or all of the Information, the Confidential Parties will promptly provide written notice of same to Ciena so that they may seek a protective order or other appropriate remedy. In no event will Confidential Parties disclose more than that portion of the Information that is legally required, and the Confidential Parties shall cooperate with Ciena in its effort to obtain a protective order or other assurance that the Information will not be disclosed, or, if it is disclosed, will be disclosed in such a manner as to limit to the greatest extent possible the number of persons who are granted access to the Information.

8    Framework of the Engagement. Ciena acknowledges that it is hiring Bridge to provide-financial advisory and consulting services regarding the Company and its potential bankruptcy filing. Bridge's engagement shall not constitute an audit, review or compilation, or any other type of financial reporting engagement that is subject to the rules of the AICPA or other such state and national professional bodies. It is further understood and agreed that Bridge does not in any respect guarantee the outcome of the Engagement to Ciena or to any stakeholder.

9.    Survival. The obligations of the parties pursuant to paragraphs 4, 6, 7, 8, 9, 11, 12, 13, 14 shall survive the termination of this Agreement.

10.    Relationship of the Parties. The parties hereto intend that an independent contractor relationship will be created by this Agreement. Bridge and its officers, members, principals, affiliates, subcontractors and their respective directors, officers, agents and employees are not to be considered employees or agents of Ciena and are not entitled to any of the benefits that Ciena provides for its employees.

11. <u>Assignability</u>. The benefits of this Agreement shall inure to the benefit of the parties hereto, the successors and assigns of Bridge and of the Indemnified Persons hereunder and their successors, assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon them and upon the successors and assigns of Bridge. This Agreement may not be assigned without the prior written consent of the parties hereto.

12. <u>Entire Agreement</u>. This Agreement incorporates the entire understanding between the parties with respect to its subject matter and supersedes all previous agreements or understandings that might exist or have existed. This Agreement may not be amended or modified, except in writing, executed by the parties hereto.

13. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of laws.

14. <u>Disclosure of Conflicts</u>. At present, Bridge knows of no fact or situation that would represent a conflict of interest for it in connection with the Engagement. However, it is possible that there may be relationships, either past or currently existing, that need to be brought to Ciena's attention as Bridge becomes familiar with the universe of parties who are involved in the Engagement. Any such disclosure will be made promptly by Bridge upon its becoming aware of a need to make such disclosure.

15. <u>Severability</u>. Any provision of this Agreement that shall be determined to be invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

16. <u>Notices</u>. All Notices required or permitted to be delivered under this Agreement shall be sent

    To Bridge:
        Bridge Associates LLC
        747 Third Avenue
        Suite 32A
        New York, NY 10017
        Attention: Anthony H.N. Schnelling
        Facsimile No (212)207-9294

With a copy to:

>Carlton Fields, P.A.
>Corporate Center Three at International Plaza
>4221 W. Boy Scout Boulevard Suite 1000
>Tampa, FL 33607-5780
>Attention: Nathaniel L. Doliner
>Facsimile No. (813) 229-4133

To Ciena:

>Ciena Capital LLC
>1633 Broadway
>New York, NY 10019
>Attention: John Scheurer,
>         Chief Executive officer
>Facsimile No.

With a copy to:

>Hunton & Willams LLP
>200 Park Avenue
>New York, NY 10166-0091
>Attention: Peter Partee, Esq.
>Facsimile No. (212)309-1100

Any changes to the above notice parties shall be made in writing. All notices under this Agreement shall be sent by facsimile or by overnight mail or courier. All notices shall be deemed to have been delivered only upon receipt or refusal by the receiving party

17   Counterparts. This Agreement may be signed in counterparts by facsimile or by electronic mail in portable document format (PDF) with originals to follow, and all such counterparts shall be deemed to be a single original Agreement.

Please confirm that the foregoing is in accordance with our understanding by signing and returning to Bridge the enclosed duplicate of this letter, whereupon it shall constitute an agreement binding upon yourselves and ourselves.

Very truly yours,

Bridge Associates LLC

Anthony H.N. Schnelling
Managing Director

ACCEPTED AND AGREED
September 29, 2008

CIENA CAPITAL LLC

By: _____
John Scheuer

Its: _____
Chief Executive Officer