UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) ) Chapter 11 |
| CIENA CAPITAL, LLC f/k/a BUSINESS LOAN EXPRESS, LLC, et al., | ) ) ) Case No. 08-13783 (AJG) |
| Debtors.[1] | ) ) (Jointly Administered) |

**FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, AND 363(c)
AND FED. R. BANKR. P. 2002, 4001 AND 9014 AUTHORIZING
DEBTORS TO USE CASH COLLATERAL AND GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES**

Upon consideration of the motion ("Motion") of Ciena Capital, LLC (collectively, "Ciena Capital") and Ciena Capital Funding LLC f/k/a BLX Capital, LLC; BLX Commercial Capital, LLC; Business Loan Center, LLC ("Business Loan Center"); BLX Holdings Corporation; BLX Capital Real Estate, LLC; BLX Commercial Capital Real Estate, LLC; BLC Real Estate, LLC; BLX Capital Real Estate (Berlin), LLC; BLC Real Estate (UPC Petroleum), LLC; and BLC Real Estate (Texas) LLC (collectively, "Ciena Affiliates" and, along with Ciena Capital, collectively, "Ciena" or "Debtors"), the Debtors and Debtors-in-Possession in the above-captioned cases (the "Cases"), by and through their counsel, Hunton & Williams, LLP for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking:

---

[1] The other Debtors are as follows: Ciena Capital Funding LLC f/k/a BLX Capital, LLC; BLX Commercial Capital, LLC; Business Loan Center, LLC; BLX Holdings Corporation; BLX Capital Real Estate, LLC; BLX Commercial Capital Real Estate, LLC; BLC Real Estate, LLC; BLX Capital Real Estate (Berlin), LLC; BLC Real Estate (UPC Petroleum), LLC; BLC Real Estate (Texas) LLC.

A. authorization for (1) Ciena (the "<u>Borrower</u>") to obtain up to $5,000,000 in principal of postpetition financing (the "<u>DIP Financing</u>"), all on the terms and conditions set forth in the Interim Order (as defined below), this Final Order (as defined below) and the Postpetition Credit Agreement, dated as of October 1, 2008 and substantially in the form attached to the Interim Order as <u>Exhibit "A"</u> (the "<u>DIP Agreement</u>," and together with all agreements, documents and instruments delivered in connection therewith, the "<u>DIP Documents</u>"), between the Borrower and Allied Capital Corporation ("<u>Allied</u>" or "<u>DIP Lender</u>"), providing for the postpetition financing and the granting of an administrative claim and subordinate secured liens pursuant to the Interim Order, this Final Order and the DIP Agreement;

B. authorization for Ciena to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

C. authorization for Ciena to (1) use the Cash Collateral (as defined in paragraph 6(d) below) pursuant to sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and all other Prepetition Collateral (as defined in paragraph 6(c) below) and (2) provide adequate protection to Ciena Capital's prepetition secured lenders, including Allied Capital Corporation as successor in interest to certain of such prepetition secured lenders (collectively, the "<u>Prepetition Secured Lenders</u>" and, together with the Prepetition Administrative Agent (as defined below in this paragraph), the "<u>Prepetition Secured Parties</u>") under that certain Second Amended and Restated Credit Agreement dated as of March 17, 2006, the First Amendment to Credit Agreement dated as of July 6, 2006, the Second Amendment to Second Amended and Restated Credit Agreement dated as of October

11, 2006, the Third Amendment and Waiver to Second Amended and Restated Credit Agreement dated as of June 12, 2007, the Fourth Amendment and Waiver to Second Amended and Restated Credit Agreement dated as of September 27, 2007, the Fifth Amendment and Waiver to Second Amended and Restated Credit Agreement dated as of January 30, 2008, and the Sixth Amendment and Waiver to Second Amended and Restated Credit Agreement dated as of August 8, 2008 (collectively, the "Prepetition Credit Agreement," and together with all other documentation executed and delivered in connection with any of the foregoing, the "Prepetition Loan Documents"), among Ciena Capital as Borrower, and BLX Holdings Corp., Business Loan Center, LLC, Ciena Capital Funding LLC f/k/a BLX Capital, LLC, BLX Commercial Capital, LLC, BLX Capital Real Estate, LLC, BLX Commercial Capital Real Estate, LLC, BLC Real Estate, LLC, BLX Capital Real Estate (Berlin), LLC, BLC Real Estate (UPC Petroleum), LLC, BLC Real Estate (Texas), LLC, and Allied Capital Corporation as Guarantors, and Citibank, N.A., as Administrative Agent (in such capacity, the "Prepetition Administrative Agent") for the L/C Issuer, the Prepetition Secured Lenders and Swingline Lenders;

D. to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") (1) authorizing the Borrower, on an interim basis, to borrow under the Interim Order and the DIP Agreement up to $2,000,000 (the "Interim Advance"), all upon the terms and conditions set forth in the DIP Documents and the Interim Order pending the Final Hearing (as defined below), (2) authorizing the Debtors to use the Cash Collateral and (3) granting adequate protection to the Prepetition Secured Parties; and

E. to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (this "Final Order") authorizing the Borrower on a final basis to continue to use the Cash Collateral and to borrow the balance of the loans under the DIP Agreement, and authorizing and approving the relief requested in the Motion to become effective pursuant to this Final Order.

The Interim Hearing having been held by this Court on October 2, 2008, and the Court having entered the Interim Order on October 3, 2008, and the Final Hearing having been held on November 12, 2008, and the Debtors, based on their determination after due consideration that the DIP Financing is not required at this time and confirming that the DIP Financing was never drawn upon, having withdrawn without prejudice that portion of the Motion seeking final authorization to obtain DIP Financing, notice having been duly given in accordance with the Bankruptcy Rules and such notice being sufficient, and upon the record of the Interim Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED that:

1. *Petition Date*.  On September 30,  2008 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

2. *Debtors in Possession*.  The Debtors continue to operate and manage their businesses as Debtors-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of these cases.

3. *Debtors' Business*.  Ciena Capital LLC is a portfolio company of Allied. Allied acquired BLC Financial Services in a going private transaction on December 31, 2000,

and subsequently merged its small business lending company Allied Capital SBLC with BLC Financial Services to form Business Loan Express, LLC. In January 2008, Business Loan Express, LLC changed its name to Ciena Capital, LLC. Since its inception in 1994 until March of 2007, Ciena has originated, sold and serviced small business loans generally secured by commercial real estate. The loan products offered by Ciena Capital and the Ciena Affiliates subsidiaries included loans guaranteed by the United States Small Business Administration ("SBA") under the SBA 7(a) loan program, conventional small business loans and small balance investment real estate loans. Since its inception, Debtor Business Loan Center, LLC has made more than 9,000 SBA loans totaling more than $3.6 billion.

4. *Disposition/Jurisdiction*. The Motion is granted in accordance with the terms of this Final Order. Any objections to the Motion and the entry of this Final Order that have not been withdrawn, waived, settled or expressly reserved herein, and all reservations of rights included therein, are hereby denied and overruled. This Court has core jurisdiction over the cases commenced on the Petition Date, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, and 363of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (d).

5. *Notice*. Notice of the Motion, the relief requested therein and the Final Hearing was served by the Debtors on their thirty largest unsecured creditors (on a consolidated basis) - the Prepetition Administrative Agent, the other Prepetition Secured Parties, counsel for SBA, the Office of the United States Attorney for the Eastern District of Michigan, Allied Capital Corporation, counsel for the Official Committee of Unsecured Creditors (the "Committee"), all parties who have requested notice in these Cases, and counsel for United

States Trustee for the Southern District of New York. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Final Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (d), and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

6. *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 14 below), the Debtors admit, stipulate, and agree that:

(a) as of the Petition Date, Ciena Capital as Borrower and the Subsidiary Guarantors (as such terms are defined in the Prepetition Loan Documents) were justly and lawfully indebted and liable, without defense, counterclaim or offset of any kind, to the Prepetition Secured Lenders (as defined in the Prepetition Credit Agreement) in the aggregate principal amount of approximately $325 million, plus accrued and unpaid interest thereon and costs and expenses including, without limitation, attorneys' fees, agent's fees, other professional fees and disbursements and other obligations owing under the Prepetition Loan Documents (collectively, the "Prepetition Indebtedness");

(b) the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable in accordance with its terms, and no portion of the Prepetition Indebtedness or any payments made to the Prepetition Secured Parties or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date are subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(c)     pursuant to any and all security agreements, pledge agreements, mortgages, fixture filings, deeds of trust, financing statements, assignments or other security documents entered into in conjunction with or related to the Prepetition Credit Agreement (in each case as heretofore amended, restated, modified, ratified or supplemented from time to time, the "Prepetition Collateral Documents"), (i) the Debtors have granted valid, binding, perfected, enforceable, first priority liens upon, and security interests in, the property as described in the Prepetition Collateral Documents (collectively, the "Prepetition Collateral") to the Prepetition Administrative Agent for the benefit of the Prepetition Secured Parties, and (ii) the Prepetition Administrative Agent's first priority liens upon, and security interests in, the Prepetition Collateral, for the benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(d)     substantially all cash, securities or other property (and the proceeds therefrom) as of the Petition Date, including without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Debtors in any account or accounts with the Prepetition Secured Parties (collectively, the "Depository Institutions") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Prepetition Loan Documents and applicable law, for the benefit of the Prepetition Secured Parties.  All proceeds of the Prepetition Collateral are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"); and

(e)     Notwithstanding anything to the contrary contained herein, the Cash Collateral shall not include, and no liens or other encumbrances shall attach to, any cash, proceeds, or other property held by any Debtor in trust for another party or any other property that is otherwise not property of the Debtors' estates within the meaning of Section 541 of the Bankruptcy Code.

7.    *The Use of Cash Collateral.*

(a)     Good cause has been shown for the entry of this Final Order.

(b)     The Debtors have an immediate need, subject to the terms hereof, to use the Prepetition Collateral (including the Cash Collateral) in order to, among other things, preserve the value of the Debtors' businesses, make payroll and satisfy other working capital and general corporate purposes of the Debtors.  The Debtors' use of the Prepetition Collateral (including the Cash Collateral) in accordance with the terms hereof is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of the Debtors' estates.

(c)     The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2).  The use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order is in the best interest of the Debtors' estates.

(d)     Each of the Debtors is authorized to use Cash Collateral during the period from the date of this Final Order through and including the earlier of (i) January 5, 2009 and (ii) the occurrence of any Termination Event (as defined below) (such period, the "Cash Collateral Period"), in accordance with, and subject to, the Budget attached hereto as **Exhibit A** (the "Budget") and the other terms and conditions of this Final

Order.  The Debtor may use Cash Collateral in an amount equal to up to 10% more than the amount of a corresponding "category" in the Budget, measured on a cumulative and aggregate, weekly basis, provided that Cash Collateral is available.  As used in this Final Order, the term "Termination Event" shall mean a written notice being provided by the Prepetition Secured Parties to the Debtors and the Committee of the occurrence of any of the following (unless the Prepetition Secured Parties otherwise agree in writing in their sole discretion):

(i)     the dismissal of any of the above-captioned cases (the "Cases") or the conversion of any Case to a case under Chapter 7 of the Bankruptcy Code;

(ii)    the appointment of an interim or permanent trustee in any Case or the appointment of a receiver or an examiner in any Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of any Debtor;

(iii)   the dissolution of any Debtor;

(iv)    except to the extent the Prepetition Secured Parties have agreed in writing in their sole discretion, (x) any stay, vacatur, reversal, modification or other amendment in any respect of this Final Order, (y) the entry of an order granting a motion or other pleading by any Debtor or the Committee seeking the entry of any order providing for any such stay, vacatur, reversal, modification or other amendment, or (z) the entry of an order granting a motion for reconsideration by any Debtor or the Committee with respect to this Final Order;

(v)     the sale, liquidation or other disposition of all, or substantially all, of the Debtors' remaining assets;

(vi)     any failure by any Debtor to comply with the Budget in accordance with the terms of this Final Order;

(vii)     the filing of any plan of reorganization or disclosure statement attendant thereto by any Debtor or the Committee in any Case: (i) to obtain additional financing under Section 364(d) of the Bankruptcy Code from any person or entity other than the Prepetition Secured Parties; (ii) to grant any person or entity other than Prepetition Secured Parties any security interest or lien upon or affecting any Prepetition Collateral; or (iii) to use Cash Collateral of Prepetition Secured Parties under Section 363(c) of the Bankruptcy Code without the prior written consent of the Prepetition Secured Parties, unless such plan provides for the payment in full of the Prepetition Indebtedness;

(viii)     the entry of an order, after the entry of this Final Order, granting, approving or allowing, in any Case, any other superpriority administrative claim or lien or security interest equal or superior to that granted to any or all of the Prepetition Secured Parties; or

(ix)     any violation by any Debtor of any material provision of this Final Order.

(e)     During the Cash Collateral Period, no Debtor shall use any Cash Collateral to pay any expenditure not authorized by the Budget or this Final Order except upon the prior written consent of the Prepetition Secured Parties.

(f)     Except to the extent expressly provided in the Budget or in this Final Order and with respect to the Carve Out (as defined below), the Debtors' authority to use Cash Collateral shall automatically terminate upon the expiration or termination of the Cash Collateral Period, regardless of whether the Debtors have expended the entire amount of Cash Collateral permitted by the terms of this Final Order; provided, however, that to the extent the Debtors have incurred, but not yet paid, an obligation during the Cash Collateral Period that is provided for in the Budget, the Debtors shall be authorized to use Cash Collateral to pay such obligation notwithstanding the expiration or termination of the Cash Collateral Period. The Cash Collateral Period may be extended under this Final Order, without further order of the Court, subject to and upon the consent of the Prepetition Secured Parties and their agreement to a further budget for such extended period, in which case a Notice of Consent to Use of Cash Collateral, with accompanying further budget, shall be filed with respect to such consent. The rights and obligations of the Debtors and Prepetition Secured Lenders with respect to all transactions and the use of Cash Collateral which have occurred prior to the termination of Debtors' authority to use Cash Collateral hereunder shall survive such termination.

8. *The Carve Out*.  Subject to the terms of this Final Order, including any limitations specified herein on the use of the Carve Out in connection with actions or investigations against the Prepetition Secured Parties, and in addition to any prepetition retainers received by Debtors' Professionals, the security interests and liens granted to the Prepetition Secured Parties pursuant to the Interim Order and this Final Order (or pursuant to any prepetition agreements or documents) shall be subject and subordinate to a carve out for the payment of unpaid fees pursuant to 28 U.S.C. § 1930 and a carve out (the "Carve Out") for the payment of up to an aggregate amount not to exceed (unless the Prepetition Secured Parties agree otherwise)

$500,000 for the allowed fees and expenses of professionals (the "Professionals") retained by the Debtors (the "Debtors' Professional Fee Cap"), $400,000 for the allowed fees and expenses of Professionals retained by the Committee (the "Committee's Professional Fee Cap"), and up to $50,000 for the allowed fees and expenses of Professionals retained by any Chapter 7 trustee appointed in these Cases (the "Chapter 7 Trustee Fee Cap"), provided that (a) no Cash Collateral shall be paid to Professionals retained by the Debtors, the Committee or any Chapter 7 trustee (other than ordinary course Professionals of the Debtors) (i) for any fees or expenses incurred by any party, including the Debtors, the Committee or any Chapter 7 trustee, in connection with the investigation (including discovery proceedings), initiation or prosecution of any Challenge Action (as defined below) (except that the Committee's Professionals may incur reasonable fees and expenses to investigate the liens and claims of the Prepetition Secured Parties) and (ii) until such Professionals' fees and expenses are allowed pursuant to Sections 330 or 331 of the Bankruptcy Code or are otherwise authorized to be paid pursuant to an order of the Court; (b) the Debtors' Professional Fee Cap shall not include or apply to payments to ordinary course Professionals including, without limitation, the Debtors' outside auditors; (c) the Debtors' Professional Fee Cap, the Committee's Professional Fee Cap and the Chapter 7 Trustee Fee Cap shall not be deemed a limitation on the allowance or payment (from unencumbered assets of the Debtors) as administrative expenses in accordance with the priorities under the Bankruptcy Code. The Carve Out shall continue notwithstanding the payment of interim fees of Professionals made before a Termination Event; provided, however, that before or after a Termination Event, the Carve Out for Professionals retained by the Committee shall be reduced dollar for dollar for all payments made from Cash Collateral to the Committee's Professionals

prior to a Termination Event but in no event shall the remaining balance of the Carve Out for the Committee's Professionals after the Termination Event be less than $100,000.

9. *Adequate Protection.* The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, and 363 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including without limitation the Cash Collateral, in an amount equal to any Collateral Diminution (as defined below). As used in this Final Order, "Collateral Diminution" shall mean an amount equal to the net diminution of the value of any Prepetition Collateral, including without limitation the Cash Collateral, resulting from the Debtors' use of Cash Collateral for expenditures that would not be chargeable to the Prepetition Secured Parties pursuant to section 506(c) of the Bankruptcy Code, whether in accordance with the terms and conditions of the Notices of Consent to Use of Cash Collateral dated October 7, 2008 and October 21, 2008, respectively, this Final Order or otherwise. In addition, solely for purposes of these Cases, Collateral Diminution (i) shall not include (a) any decline in the value of any Prepetition Collateral due either to changes in market conditions, a disposition, or a run off of the portfolio of loans or residuals, or (b) ordinary costs incurred servicing the Prepetition Collateral, and (ii) shall include all fees and expenses of Committee Professionals paid from Cash Collateral, and (iii) may include the fees and expenses of the Debtors' Professionals paid from Cash Collateral. Notwithstanding any other provision herein, cash payments from the proceeds of the Prepetition Collateral made to the Prepetition Secured Lenders shall not constitute Collateral Diminution. As adequate protection for any Collateral Diminution, the Prepetition Secured Parties are hereby granted the following:

(a)    <u>Adequate Protection Claims</u>. Allowed superpriority administrative claims as provided in section 507(b) of the Bankruptcy Code to the extent of any

Collateral Diminution, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, which shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "Adequate Protection Claims"), which Adequate Protection Claims shall include any and all adequate protection claims granted to the Prepetition Secured Parties pursuant to this Final Order, have recourse to and be payable from all pre- and postpetition property of the Debtors including all avoidance or equitable recovery actions under sections 105, 502(d), 510, 542 through 551 and 553 of the Bankruptcy Code ("Avoidance Actions") and proceeds or property recovered in respect of Avoidance Actions, and shall expressly include all proceeds of all 7(a) loans guaranteed by the SBA to the extent that such proceeds are owned by any Debtor.

(b)     Adequate Protection Liens.  As security for the payment of the amount of any Collateral Diminution, the Prepetition Secured Parties are hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest, in and lien upon, all Cash Collateral, all other prepetition and postpetition assets, and all proceeds recovered in respect of Avoidance Actions (the "Adequate Protection Liens"), provided, however, that the Adequate Protection Liens granted herein shall (i) be subject and subordinate only to valid, perfected and enforceable prepetition liens (if any) that are senior to the Prepetition Secured Parties' liens or security interests as of the Petition Date,

(ii) not attach to (a) all or any part of a 7(a) loan owned or guaranteed in whole or in part by the SBA in which any Debtor has an interest, or (b) solely for purposes of this Final Order and without prejudice to, but subject to, any decision in any other contested matter or adversary proceeding before this Court, any interests, rights or obligations of Business Loan Center therein or arising therefrom, any licenses pertaining thereto, or the proceeds of any of the foregoing, provided, however, that such Adequate Protection Liens shall attach to such interests, rights, obligations, licenses or proceeds, effective as of the date of and pursuant to this Final Order, upon the entry of a final, non-appealable order or judgment that such interests, rights, obligations, licenses or proceeds may lawfully be collateral without the consent of the SBA, or as otherwise ordered by the Court; and (iii) be subject and subordinate to the Carve Out. Notwithstanding anything in the foregoing or this Final Order, nothing herein shall prejudice the Committee, the SBA or the Prepetition Secured Parties with respect to the Prepetition Secured Parties' assertion (or any other parties' opposition) that the Prepetition Secured Parties' prepetition and postpetition security interests and liens attach or may lawfully attach to the interests, rights, obligations, licenses or proceeds of 7(a) loans guaranteed by the SBA that are owned by any Debtor or the Court's determination regarding the validity of the Prepetition Secured Parties' liens and security interests in any such interests, rights, obligations, licenses or proceeds. The Adequate Protection Liens shall include all security interests and liens granted to the Prepetition Secured Parties as security for the payment of any Collateral Diminution pursuant either to the Interim Order or this Final Order. Notwithstanding anything in this Final Order to the contrary, the Prepetition Secured Parties agree to attempt to satisfy their claims, including any Adequate

Protection Claims, first from all Prepetition Collateral other than Avoidance Actions before resorting to recovery of the proceeds of Avoidance Actions.

(c)     Reservation of Rights.    Nothing contained in this Final Order constitutes a finding or other determination with respect to the adequacy of the protection of the interest of the Prepetition Secured Lenders in the Prepetition Collateral or shall preclude any or all of the Prepetition Secured Lenders from seeking additional or different adequate protection (as defined in Section 361 of the Bankruptcy Code), and this Final Order is without prejudice to the rights of the Prepetition Secured Lenders at any time to seek to terminate or modify the automatic stay.    Nothing in this Final Order shall affect, and the Prepetition Secured Lenders do not waive, any of their rights under the Prepetition Loan Documents and the Bankruptcy Code, and the rights, claims, liens, security interests and priorities of the Prepetition Secured Lenders arising hereunder are in addition to, and not intended as a waiver or substitution for, the rights, claims, liens, security interests and priorities of the Prepetition Secured Lenders under the Prepetition Loan Documents.

10. *Fees And Expenses*.    As additional adequate protection, subject to section 506(b) of the Bankruptcy Code, the Debtors shall pay indefeasibly in cash: (i) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred post-petition by the Prepetition Secured Parties under the Prepetition Credit Agreement on a current basis, and (ii) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants, and auditors) incurred by the Prepetition Lender's Administrative Agent under the Prepetition Credit

Agreement arising subsequent to the Petition Date. Provided further, however, that Debtors may not pay any professional fees, expenses and disbursements described in this paragraph out of proceeds of all or any part of a 7(a) loan owned or guaranteed in whole or in part by the SBA in which any Debtor has an interest, unless and until (a) a final, non-appealable order or judgment is entered that all or any portion of such proceeds were lawfully pledged by Business Loan Center to the Prepetition Secured Lenders without the consent of the SBA, or (b) the Court otherwise orders. The payment of the fees, expenses and disbursements set forth in this paragraph 10 of this Final Order shall be made within thirty (30) business days after the receipt by the Debtors, Allied, the Committee and the United States Trustee (the "Review Period") of invoices therefor (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications; provided, however, that the Debtors, Allied, the Committee and the United States Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees; and within thirty (30) days of the Review Period (ii) the Debtors, Allied, the Committee or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Lenders' Administrative Agent of any hearing on such motion or other pleading, setting forth the objections to the Disputed Invoiced Fees. Any Professional in receipt of a payment of any Disputed Invoiced Fees shall be obligated to disgorge such payment to the extent required by final order of this Court.

11. *Survival*. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order, which may be entered (a) converting the Debtors' Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (b) dismissing the Debtors'

Chapter 11 cases, or (c) confirming or consummating any plan of reorganization in the Debtors' Chapter 11 cases that is not consented to by the Prepetition Secured Parties, and the priorities in payment, claims, liens and security interests shall maintain their priorities as provided by the Interim Order and this Final Order.

12. *Successors and Assigns*. The provisions of this Final Order shall be binding upon the Prepetition Secured Parties and the Debtors, and their respective successors and assigns (including any trustee appointed or elected for the estates of the Debtors) and inure to the benefit of the Prepetition Secured Parties and the Debtors, and their respective successors and assigns and shall be binding upon all other creditors of the Debtors and other parties in interest.

13. *Reservation of Rights of Prepetition Parties*. This Court finds that the adequate protection provided by this Final Order is reasonable to protect the interests of the Prepetition Secured Parties. Notwithstanding the foregoing, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek further modification of the grant of adequate protection provided herein so as to provide different or additional adequate protection, as provided in paragraph 9(c).

14. *Effect Of Stipulations On Third Parties*. The Debtors' admissions, stipulations and releases contained in this Final Order including specifically, and without limitation, paragraph 6 of this Final Order: (i) shall be binding upon the Debtors; and (ii) shall be binding upon all other parties in interest, including any Committee(s) appointed in these Cases, unless (1) a party has filed an adversary proceeding or contested matter (a "Challenge Action") on or before the later of February 1, 2009, except as otherwise expressly extended in writing by Allied Capital Corporation, Citibank, N.A. (to the extent the claim being asserted in the potential Challenge Action affects Citibank, N.A.), and the party-in-interest, including without limitation

the Committee and the SBA if applicable, asserting the potential Challenge Action or, in the case of a trustee that is appointed under Section 1104 of the Bankruptcy Code on or before the date that is ninety (90) days after the formation of the first Committee in any of these Cases, the date that is the later of thirty (30) days after appointment of such trustee or sixty (60) days after the date this Final Order is entered (the "Challenge Action Deadline") (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness or the Prepetition Secured Parties' security interests in, and liens upon, the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates, and (2) the Court rules by final order in favor of such party in interest in any such timely and properly filed adversary proceeding or contested matter. Notwithstanding the foregoing, any extension of the Challenge Action Deadline that affects all of the Prepetition Secured Parties shall require the express prior written agreement of all of the Prepetition Secured Parties. In the event no such Challenge Action is properly filed as of such Challenge Action Deadline or the Court does not rule by final order in favor of the plaintiff or movant in any such proceeding: (a) the Debtors' admissions, stipulations and releases contained in paragraph 6 of this Final Order shall be binding upon all parties in interest, including any Committee appointed in these Cases and any Chapter 11 or Chapter 7 trustees appointed in these Cases; (b) the obligations of the Debtors under the Prepetition Loan Documents shall constitute allowed claims for all purposes in these Cases, and any subsequent Chapter 7 case(s); (c) the Prepetition Secured Parties' security interests in, and liens upon, the Prepetition Collateral shall be deemed to have been, as of Petition Date, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Indebtedness and the Prepetition Secured Parties' security interests in and liens on the

Prepetition Collateral shall not be subject to any other or further challenge by any Committee appointed in these Cases or any other party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto. If any such Challenge Action is properly filed as of such dates, the Debtors' admissions, stipulations and releases contained in paragraph 6 of this Final Order shall nonetheless remain binding and enforceable (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter. For the purpose of commencing a Challenge Action, the Committee shall specifically be granted standing to assert or commence any such adversary proceeding or contested matter. Nothing contained in this Final Order shall (i) be deemed to grant standing to any party other than the Committee to commence a Challenge Action or (ii) limit the standing of any party to commence a Challenge Action to the extent such party had standing to assert such claims.

15. *Limitation On Use Of Collateral.* The Debtors shall use the Prepetition Collateral (including the Cash Collateral) solely as provided in this Final Order. Notwithstanding anything herein or in any other order of this Court to the contrary, neither the Prepetition Collateral (including the Cash Collateral) nor the Carve Out may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation against any Prepetition Secured Party or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the Prepetition Secured Parties or asserting any defense, claim, counterclaim, or offset with respect to the Prepetition Indebtedness or the security interests in or liens on the Prepetition Collateral (including the Cash Collateral), except, with respect to the Professional fees and expenses incurred by the Committee solely as authorized in paragraph 8 above), (b) to prevent, hinder or otherwise delay the Prepetition Administrative

Agent's assertion, enforcement or realization on the Prepetition Collateral or the Cash Collateral in accordance with the Prepetition Loan Documents or this Final Order, (c) to seek to modify any of the rights granted to the Prepetition Secured Parties hereunder or under the Prepetition Loan Documents, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by an Order of this Court.

16. *Exculpation*. Nothing in this Final Order or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.

17. *Retention of Jurisdiction*. The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors subject to the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

18. *Limitation of Liability*. In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability act of 1980 or any similar federal or state statute).

19. *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

20. *Reasonable Cooperation*.  The Debtors shall comply in a timely manner with its obligations under the applicable rules for adversary proceedings and/or contested matters (as applicable) with respect to all reasonable discovery requests made in respect of the investigation of any potential Challenge Action.


DONE AND ORDERED at New York, New York, on this 21st day of November, 2008.

BY THE COURT

**s/Arthur J. Gonzalez**
HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY JUDGE

74351.000002 EMF_US 26506680v1