UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:                                          :    Chapter 11
                                                :
CIENA CAPITAL LLC f/k/a                         :
BUSINESS LOAN EXPRESS, LLC, et al.,             :    Case No. 08-13783 (AJG)
                                                :
          Debtors.                              :    (Jointly Administered)
                                                :

---

**OPINION**

Before this Court is the Verified Objection to Claim Number 81 filed by Richard E. Ivers Jr. ("Ivers") pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007 (the "Objection") filed by Ciena Capital LLC f/k/a Business Loan Express, LLC, et al., (the "Debtors"). Ivers filed his proof of claim on December 12, 2008 asserting a general unsecured claim against the Debtors in the amount of $9,792,536.05 for an alleged breach of contract.[1]

*Background*

In 2005, Ivers sought financing from one of the Debtors, BLX Capital ("BLX") to purchase land and building located at 1224 N. Gilbert Road, Mesa, Arizona 86203 (the

---

[1] On June 10, 2009, the Debtors filed the Debtors' (I) Motion for Entry Of An Order Pursuant To Fed. R. Bankr. P. 3007(c) Authorizing The Filing of Omnibus Objections To Certain Categories of Claims That Are Not Set Forth In Fed. R. Bankr. P. 3007(d) And That Can Be Resolved Without Material Factual Or Legal Disputes, And (II) Third Omnibus Objection To Claims Pursuant to 11 U.S.C. §§ 105, 502, and Fed. R. Bankr. P. 3007 (the "Third Omnibus Claims Objection"). Pursuant to the Third Omnibus Claims Objection, the Debtors sought to expunge the Proof of Claim filed by Ivers. On June 24, 2009, the Court received Ivers's response to the Third Omnibus Claims Objection. On July 15, 2009, the Court heard arguments of Debtors' counsel regarding Ivers's Proof of Claim. Ivers did not participate at the July 15, 2009 hearing. On October 26, 2009, the Court entered an Order Denying, Without Prejudice, The Debtors' Omnibus Objection to Ivers's Breach of Contract Claim. On December 11, 2009, the Debtors filed the Objection seeking the entry of an order expunging and disallowing Ivers's proof of claim with prejudice. On or about January 7, 2010, Ivers filed a response to the Objection. On February 8, 2010, the Debtors and Ivers entered into a Stipulation of Uncontested Facts (the "Statement of Facts") regarding Claim Number 81 and the Debtors' Objection. A hearing on this matter was held on February 17, 2010 before the Court.

"Commercial Property") to build and operate a convenience store. Ivers also sought financing to make certain renovations of the Commercial Property and purchase equipment for the business.

On or about February 24, 2005, KS Appraisals appraised the Commercial Property with an "as is" value of $445,000.00 and a prospective market value after the proposed renovations of $555,000.00. The Southwestern Business Finance Corporation (the "CDC"), a Small Business Administration ("SBA") licensed Certified Development Company, was to fund one of the two loans ultimately proposed by Ivers. On March 16, 2005, BLX faxed Ivers a conditional approval letter. On March 21, 2005, BLX delivered a second letter to Ivers, which delineated the terms and conditions of the two proposed loans (together with the March 16, 2005 letter, the "Commitment Letters"). On March 31, 2005, CDC issued a letter stating that the amounts of loans under the Commitment Letters have been decreased. Prior to the loan closing on April 29, 2005, BLX advised Ivers about the reduction in the loan amounts as set forth in the Commitment Letters.

On or about April 29, 2005 (the "Closing Date"), Ivers d/b/a Sparky's Deli and Convenience Store, as borrower, and BLX, as lender, entered into two loan agreements, the first loan agreement ("Loan Agreement A")[2] in the amount of $363,730.00 (the "Senior Loan") and the second loan agreement ("Loan Agreement B," together with Loan Agreement A, the "Loan Agreements")[3] in the amount of $254,607.00 (the "Junior

---

[2] In connection with Loan Agreement A, Ivers executed a promissory note ("Promissory Note A") in favor of BLX in the amount of $363,730. Under Loan Agreement A, Ivers also executed a security agreement ("Security Agreement A") and a Deed of Trust ("Deed of Trust A") in favor of BLX. Under the Security Agreement A, Ivers granted BLX a first priority security interest in, and lien upon, substantially all of Ivers's business assets, including, but not limited to, all accounts, inventory, equipment, furniture, fixtures and general intangibles and all proceeds thereof (collectively "Business Assets").

[3] In connection with Loan Agreement B, Ivers executed a promissory note ("Promissory Note B") in favor of BLX in the amount of $254,607. Under Loan Agreement B, Ivers also executed a security agreement ("Security Agreement B" and together with Security Agreement A, the "Security Agreements") and a Deed

2

Loan," together with the Senior Loan, the "Loans").  On the Closing Date, Ivers executed a Nonfunding Affidavit (the "Nonfunding Affidavit" and together with the Loan Agreements, the Promissory Notes, the Security Agreements, and the Deeds of Trust, the "Loan Documents").

By September 9, 2005, BLX disbursed a total of $601,485.23 to Ivers under the Loan Agreements.  The Junior Loan was to be funded by CDC, but CDC never funded its portion of the Loans.

Ivers failed to make complete monthly payments as required under the Loan Documents on June 1, 2005 and subsequently made late and sometimes incomplete payments under the Loan Documents throughout the summer of 2005.[4]  Ivers also experienced construction delays and was involved in legal disputes with several contractors, including Artist Sign Design, LLC ("Artist") and KWall Electric ("Kwall"). Ivers opened the convenience store in September 2005.

On or about October 12, 2005, USALCO, LTD. ("USALCO"), a materialman, filed a mechanic's lien in the amount of $16,119.02 against the Commercial Property based on an alleged failure to pay for work and/or materials.  On or about November 14, 2005, Edson Electric Supply, Inc. ("Edson") filed a mechanic's lien in the amount of $7,658.36 against the Commercial Property based on an alleged failure to pay for work and/or materials.  On December 9, 2005, BLX received a title endorsement from Old Republic Title Insurance Company ("Old Republic") concerning the Commercial Property.

---

of Trust ("Deed of Trust B" and together with Deed of Trust A, the "Deeds of Trust") in favor of BLX. Under Security Agreement B, Ivers granted BLX a second priority security interest in, and lien upon, substantially all of Ivers's Business Assets.  Deed of Trust B secured BLX in second position, behind Deed of Trust A in priority, with respect to the Commercial Property.

[4] Ivers conceded that he was late on monthly payments starting in June 2005 (Ivers Dep. 37).

3

Arizona Stucco Systems LLC ("Arizona Stucco"), another contractor that was providing services to Ivers, filed a mechanic's lien on the Commercial Property on December 1, 2005.

Shortly after December 5, 2005, BLX received a check from Ivers in the amount of $16,881.84, representing loan reinstatement through December 31, 2005. This was the last payment Ivers made to BLX under the Loan Agreements. On December 13, 2005, BLX notified Ivers that he must obtain release letters from USALCO and Edson regarding their respective mechanic's liens before BLX can resume loan disbursements. On December 2, 2005, Ivers paid USALCO his claim and on May 8, 2006, USALCO recorded a Release of Laborer and Materialmen's Lien in connection with the Commercial Property.

Ivers failed to make his January 2006 payment under the Loan Documents. On February 6, 2006, BLX sent Ivers a notice of default under the Loan Documents. Ivers closed the convenience store on February 12, 2006.

Upon notifying Ivers of his default on the Loans, BLX instituted foreclosure proceedings against the Commercial Property pursuant to Arizona statute by Notices of Trustee's Sale served on May 15, 2006 and scheduled a public auction of the Commercial Property for August 15, 2006. BLX acquired the Commercial Property through a credit of $600,320.00 at the uncontested foreclosure proceeding and subsequently sold the Commercial Property for $480,000.00 on or about February 27, 2007. BLX did not pursue a deficiency judgment against Ivers or any of the loan guarantors under the Loan Documents.

4

Two years after the foreclosure proceedings, Ivers filed a Complaint against BLX in the Superior Court of Arizona in Maricopa County, AZ. Ivers's state court action is now before this Court as a result of the Debtors' chapter 11 filing. Ivers alleges that BLX breached its contract with him by (1) failing to loan him the amount of money required under the Commitment Letters; (2) failing to pay Arizona Stucco; and (3) failing to timely pay the 2005 property taxes of $3,480.90. Significantly, Ivers is alleging no breach under the Loan Agreements; his claims are based solely on BLX's alleged breach under the Commitment Letters.

*The Commitment Letter*

The Court will not reach the issue of whether the Commitment Letters were superseded by the Loan Agreements under the theories of merger, integration and parole evidence rule as argued by the Debtors or remained separate and distinct contracts independent of the Loan Agreements as argued by Ivers, because under either scenario, the Court finds that the Commitment Letters created no enforceable legal obligations of the parties in this case as the multiple conditions precedent in the Letters were never satisfied. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." RESTATEMENT 2D CONTRACTS § 224. When a condition does not occur, unless that non-occurrence has been excused, no performance under the contract is required, a party's duty is discharged, and the fact that the condition did not occur does not constitute a party's breach (unless he was obligated to secure the occurrence of the condition). *See* id. § 225.

5

Courts have held that when a contract is contingent on an express condition and that condition is not fulfilled, parties are excused from performance. *See Oppenheimer & Co. v. Oppenheim, Apple, Dixon & Co.*, 660 N.E.2d 415, 421 (N.Y. 1995) ("Express conditions are those imposed by the parties themselves. . . . [They] must be literally performed"); *Preferred Mortgage Brokers, Inc. v. Byfield*, 282 A.D.2d 589, 590 (N.Y. App. Div. 2d Dep't 2001) (granting summary judgment to defendants because loan documents had never been accepted in writing as required by the express condition, and thus, the obligation to pay a broker's fee never arose); *Fawaz v. Bus. Loan Express, LLC*, 2006 WL 1779411 (E.D. Mich. 2006) (finding no breach of contract when lender did not finance a project despite commitment letter for $600,000.00, based on a problematic environmental assessment and the Small Business Administration's failure to partially guaranty the loan, both of which were conditions to a final loan agreement).

The Commitment Letters between BLX and Ivers contained several conditions precedent; the non-occurrence of any one of them would preclude the contractual obligation of either party.[5] It is undisputed that the four conditions precedent relating to

---

[5] The Commitment Letters state that the Loans are "subject to the following terms of this Commitment Letter and the simultaneous closing of Loan B by the Small Business Administration (SBA) licensed Certified Development Company." (Statement of Facts, Ex. A). Under the section entitled "Other Conditions Prior to Closing," it is stated that:

> 8. SBA Debenture Authorization must be received, reviewed and acceptable to BLX Capital. Closing of the debenture will be simultaneous with this loan's closing, with final funding within 180 days. The CDC must certify in writing to BLX Capital that all conditions necessary for the closing by the CDC and the issuance and sale of the Debenture have been met including, but not limited to, satisfaction and completion of all of the items delineated as items of responsibility of the CDC in the "It is CDC's Responsibility to" section of the Authorization for Debenture Guarantee.
> 9. BLX Capital shall have received all necessary SBA approvals, guaranties and authorizations with respect to the loan, and such shall remain in effect on the date of closing.
> 10. The CDC must certify in writing to BLXC that all conditions necessary for the closing by the CDC and the issuance and sale of the Debenture have been met including, but not limited to, satisfaction and completion of all the items delineated

6

SBA approval and CDC certification failed to occur. Specifically, CDC failed to close on the Junior Loan or reimburse BLX as interim lender because Ivers defaulted on the Loans shortly after signing the Loan Agreement. Further, CDC changed the loan amount in the Commitment Letter per a letter dated March 31, 2005, stating that, "The amount of the project has slightly decreased due to a lowering bank fee. The amounts of the loans have decreased and the borrower injection has increased and a lower appraisal value on the land and building…." (Bozeman Decl. ¶ 3, Ex. A). Ivers was notified, prior to entering into the Loan Agreements, that the loan amounts have been reduced. As the conditions precedent were not satisfied, neither BLX nor Ivers had obligations to perform under the Commitment Letter. Ivers's continued reliance on the Commitment Letters, as the basis for a breach of contract claim, despite its unfulfilled conditions precedent, reflects a mistaken understanding of the law.

For the foregoing reasons, the Objection is hereby GRANTED. An order consistent with this Opinion will be entered herewith.

Dated:  New York, New York
        March 17, 2010

                                s/Arthur J. Gonzalez
                                ARTHUR J. GONZALEZ
                                CHIEF UNITED STATES BANKRUPTCY JUDGE

---

as items of responsibility of the CDC in the "It is CDC's Responsibility to" section of the Authorization for Debenture Guarantee.
11. the BLXC loan closing must take place simultaneously with or subsequent to the 504 closing by the CDC with final funding within 180 days.

*Statement of Facts, Ex. A.*

7