**EXHIBIT 1**

**DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
                                                )
In re:                                          )    Chapter 11
                                                )
CIENA CAPITAL LLC f/k/a                         )
BUSINESS LOAN EXPRESS, LLC, et al.,             )    Case No. 08-13783 (AJG)
                                                )
                      Debtors.[1]               )    (Jointly Administered)
                                                )
———————————————————————


# DEBTORS' FIRST AMENDED
## JOINT PLAN OF REORGANIZATION

Peter S. Partee
Scott H. Bernstein
Jack A. Molenkamp
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

-and-

Andrew Kamensky (*pro hac vice*)
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Ste. 2500
Miami, Florida  33131
(305) 810-2500

Dated:  July 9, 2010

*Attorneys for Debtors and*
  *Debtors-in-Possession*

---

[1]    The Debtors are the following:  Ciena Capital LLC f/k/a Business Loan Express, LLC; Ciena Capital Funding LLC f/k/a BLX Capital, LLC; BLX Commercial Capital, LLC; Business Loan Center, LLC; BLX Holdings Corp.; BLC Capital Financial Corporation; BLC Capital Financial Corporation, II; BLX Capital Real Estate, LLC; BLX Commercial Capital Real Estate, LLC; BLC Real Estate, LLC; BLC Financial Corporation; BLC Financial Corporation, II; BLC Capital Funding, LLC; BLC Capital Financial, LLC; BLC Funding, LLC; BLC Financial, LLC; BLX Capital Real Estate (Berlin), LLC; BLC Real Estate (UPP Petroleum), LLC; BLC Real Estate (Texas), LLC.

# TABLE OF CONTENTS

**ARTICLE I**       INTRODUCTION ..........................................................................................1

**ARTICLE II**      RULES OF INTERPRETATION, COMPUTATION OF TIME AND
                    DEFINED TERMS ...............................................................................1
   2.1     Rules of Interpretation ......................................................................1
   2.2     Computation of Time .........................................................................1
   2.3     References to the Debtors or the Reorganized Debtors ....................1
   2.4     Defined Terms ....................................................................................1
   2.5     Exhibits ............................................................................................12

**ARTICLE III**     TREATMENT OF UNCLASSIFIED CLAIMS............................12
   3.1     Administrative Claims .....................................................................12
   3.2     Professional Fees .............................................................................13
   3.3     Priority Tax Claims ..........................................................................13

**ARTICLE IV**      CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
                    AND INTERESTS...............................................................................14
   4.1     Classification Rules .........................................................................14
   4.2     Summary of Classification and of Claims and Interests ..................14
   4.3     Classification and Treatment of Claims and Interests .....................15
   4.4     Full Satisfaction, Discharge and Release.........................................19
   4.5     Cancellation of Existing Agreements and Securities.......................19
   4.6     Miscellaneous ..................................................................................19

**ARTICLE V**       EXECUTORY CONTRACTS AND UNEXPIRED LEASES......................19
   5.1     Treatment of Executory Contracts and Unexpired Leases ...............19
   5.2     Rejection Claims..............................................................................20
   5.3     Cure Claims .....................................................................................20

**ARTICLE VI**      MEANS FOR IMPLEMENTATION OF THE PLAN..................20
   6.1     Revolving Credit Facility.................................................................20
   6.2     Restructured Credit Facility.............................................................20
   6.3     Settlements.......................................................................................20
   6.4     Execution of Related Documents......................................................21
   6.5     Governance of the Reorganized Debtors ..........................................21
   6.6     Elimination of Classes .....................................................................21
   6.7     Release of Liens...............................................................................21
   6.8     Indemnification of Directors, Managers, Officers and Employees .................22
   6.9     United States Trustee Fees................................................................22
   6.10    Revocation and Withdrawal of the Plan ...........................................22

**ARTICLE VII**     PROVISIONS GOVERNING DISTRIBUTIONS .........................................22

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 7.1 | Objections | 22 |
| 7.2 | Estimation of Claims | 23 |
| 7.3 | Distribution for Claims Allowed as of the Effective Date | 23 |
| 7.4 | Delivery of Distributions; Undeliverable Distributions | 23 |
| 7.5 | Disputed Claims | 24 |
| 7.6 | Prosecution of Objections to Claims | 25 |
| 7.7 | Disbursement of Funds | 25 |
| 7.8 | Direction to Parties | 25 |
| 7.9 | Setoffs and Recoupments | 25 |
| 7.10 | No Recourse | 25 |
| 7.11 | Manner of Payment Under Plan of Reorganization | 26 |
| 7.12 | No Distribution in Excess of Allowed Amount of Claim | 26 |
| 7.13 | Treatment of the Undistributed Settlement Amounts | 26 |
| **ARTICLE VIII** | CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN | 26 |
| 8.1 | Condition Precedents to Confirmation | 26 |
| 8.2 | Conditions Precedent to the Effective Date | 26 |
| 8.3 | Waiver of Conditions | 27 |
| 8.4 | Effect of Non-Occurrence of Conditions Precedent to the Effective Date | 27 |
| **ARTICLE IX** | EFFECT OF CONFIRMATION | 28 |
| 9.1 | Vesting of Assets in Reorganized Debtors | 28 |
| 9.2 | Discharge of Claims Against the Debtors and Cancellation of Interests | 28 |
| 9.3 | Binding Effect | 28 |
| 9.4 | No Waiver of Discharge | 29 |
| 9.5 | Preservation of Causes of Action; Standing of Reorganized Debtors | 29 |
| **ARTICLE X** | RELEASES, EXCULPATIONS AND INJUNCTIONS AGAINST INTERFERENCE WITH THE PLAN | 29 |
| 10.1 | Releases | 29 |
| 10.2 | Exculpations and Limitation of Liability | 30 |
| 10.3 | Injunction Related to Releases and Exculpations | 30 |
| **ARTICLE XI** | RETENTION OF JURISDICTION | 30 |
| 11.1 | General Scope of Jurisdiction | 30 |
| 11.2 | Claims and Causes of Action | 31 |
| 11.3 | Specific Jurisdiction | 31 |
| 11.4 | Failure of Bankruptcy Court to Exercise Jurisdiction | 33 |
| **ARTICLE XII** | MISCELLANEOUS PROVISIONS | 33 |

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| 12.1 | Governing Law | 33 |
| 12.2 | Payment of Statutory Fees | 33 |
| 12.3 | Substantial Consummation | 33 |
| 12.4 | Amendments | 33 |
| 12.5 | Term of Injunctions or Stays | 34 |
| 12.6 | Section 1145 Exemption | 34 |
| 12.7 | Section 1146 Exemption | 34 |
| 12.8 | Compliance with Tax Requirements | 34 |
| 12.9 | Further Assurances | 34 |
| 12.10 | Severability of Plan Provisions | 35 |
| 12.11 | Service of Documents | 35 |
| 12.12 | Dissolution of Committee | 36 |
| 12.13 | Notice of Effective Date | 36 |
| 12.14 | Conflicts | 36 |
| 12.15 | Filing of Additional Documents | 36 |

**ARTICLE XIII** REQUEST FOR CONFIRMATION ...........................................................37

# ARTICLE I
# INTRODUCTION

Ciena Capital LLC f/k/a Business Loan Express, LLC and the other Debtors in the above-captioned cases hereby propose the following Debtors' First Amended Joint Plan of Reorganization (as it may be amended, modified and/or supplemented from time to time, the "Plan") pursuant to section 1121(a) of the United States Bankruptcy Code, §§ 101-1532 (as it may be amended from time to time, the "Bankruptcy Code").

# ARTICLE II
# RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

### 2.1    Rules of Interpretation

For purposes of the Plan:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine or neutral gender; (ii) any reference in the Plan to a contract, an instrument, a release, an indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or an exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) the words "hereof," "herein," "hereto," and "hereunder" refer to the Plan in its entirety rather than to a particular portion of the Plan; (v) captions and headings to Articles and sections of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vi) in the event of any inconsistency between the terms of the Plan and the terms of the Disclosure Statement, the terms of the Plan shall control; and (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

### 2.2    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### 2.3    References to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to a Debtor or a Reorganized Debtor shall mean the applicable Debtor or Reorganized Debtor as the context requires.

### 2.4    Defined Terms

Terms herein with an initial capital not required by standard capitalization rules are defined terms, and each such term not parenthetically or otherwise defined herein shall have the meaning ascribed to it below.

(a)  "Administrative Agent" means Citicorp, N.A., as agent under the Prepetition Credit Facility.

(b)  "Administrative Claim" means all Claims for the costs and expenses of administering the Chapter 11 Cases under sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including without limitation (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates and operating businesses, (ii) Claims for compensation for professional services and reimbursements of expenses under sections 328, 330 or 331 of the Bankruptcy Code and other Professional Fees, and (iii) fees or charges assessed against the Debtors under 28 U.S.C. §§ 1911 - 1930. For the avoidance of doubt, "Administrative Claim" shall not include any Cure Claim (as defined below).

(c)  "Administrative Claims Bar Date" means the first Business Day that is 30 calendar days after the Effective Date.

(d)  "Administrative Claims Objection Deadline" means the first Business Day that is 45 calendar days after the Effective Date.

(e)  "Agricultural Settlement Fund" means the Cash distribution fund established pursuant to the Challenge Action Settlement for the benefit of the Holders of Allowed Claims against Debtor BLX Commercial Capital, LLC in an amount equal to at least (i) the sum of all Allowed Administrative, Priority and Other Secured Claims against Debtor BLX Commercial Capital, LLC plus (ii) $42,702.

(f)  "Allied Capital" means Allied Capital Corporation, a Maryland corporation, and its successor and assigns.

(g)  "Allowed Claim" means a Claim that: (i) has been listed in the Schedules and not listed as contingent, unliquidated or disputed; (ii) as to which a Proof of Claim (in the case of a General Unsecured Claim, Rejection Damages Claim, Priority Claim or Secured Claim) has been filed on or before the applicable Bar Date (or is otherwise deemed timely filed in a final and non-appealable order of the Bankruptcy Court) and as to which no objection has been filed by any of the Debtors or any other party in interest with standing prior to the Claims Objection Deadline; (iii) an Administrative Claim as to which a request for payment has been filed on or before the Administrative Claims Bar Date (or is otherwise deemed timely filed in a final and non-appealable order of the Bankruptcy Court) and as to which no objection has been filed by any of the Debtors or any other party in interest with standing prior to the Administrative Claims Objection Deadline; (iv) a Cure Claim that has been listed in the Cure Claims Schedule and not disputed in accordance with Section 5.3 of the Plan prior to the Cure Claim Dispute Deadline; or (v) has been allowed (A) pursuant to a final and non-appealable order of the Bankruptcy Court, (B) in any stipulation that is executed by a Debtor and the Holder of such Claim prior to the Confirmation Date and approved by the Bankruptcy Court in a final and non-appealable order, or (C) in any stipulation that is executed by a Reorganized Debtor and the Holder of such Claim on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court in a final and non-appealable order; provided, however, unless otherwise specified herein or by a final and non-appealable order of the Bankruptcy Court, the term "Allowed Claim" shall not, for

any purpose under the Plan, include any interest, penalties, premiums or late charges on such Claim accruing from and after the Petition Date.

(h)        "Allowed Class *n* Claim" means an Allowed Claim in the Class denoted by *n*.

(i)        "Ares Capital" means Ares Capital Corporation, as successor by merger to Allied Capital, and its successors and assigns.

(j)        "Ares Gift Fund" means a Cash distribution fund in the amount of $230,000 donated voluntarily by Ares Capital to the Estate of Ciena Capital Funding to the extent necessary to make the additional distributions to Holders of Allowed General Unsecured Claims against Ciena Capital Funding called for in Section 4.3(f)(ii) of the Plan.

(k)        "Assets" means all of the right, title and interest of the Debtors in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitute property of the Debtors' Estates.

(l)        "Avoidance Actions" means all avoidance, recovery, subordination or other Causes of Action or remedies that may be brought by or on behalf of a Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including without limitation all Causes of Action arising under Chapter 5 of the Bankruptcy Code.

(m)        "Ballots" means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims may indicate their acceptance or rejection of the Plan and exercise the Release Opt-Out Election should they choose to do so.

(n)        "Bankruptcy Code" shall have the meaning ascribed to that phrase in Article I of this Plan.

(o)        "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

(p)        "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same shall be applicable to the Chapter 11 Cases.

(q)        "Bar Date" shall mean the Non-Governmental Claims Bar Date, the Rejection Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Unit Claims Bar Date, as applicable.

(r)        "Bar Date Order" means the Order (A) Establishing Bar Date for Filing Proofs of Claim, (B) Approving the Bar Date Notice and the Form and Manner of Notice Thereof, and (C) Authorizing the Debtors to Provide Notice of Bar Date entered by the Bankruptcy Court in the Chapter 11 Cases on December 10, 2008.

(s)        "Business Day" means any day other than a Saturday, a Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

(t)        "Cash" means lawful currency of the United States of America and equivalents thereof.

(u)        "Causes of Action" means all actions, causes of actions, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross claims, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, disputed or undisputed, secured or unsecured, asserted or assertable directly or indirectly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, through and including the Effective Date, including without limitation all Avoidance Actions.

(v)        "Challenge Action" shall mean that certain adversary proceeding no. 09-01025 commenced in the Bankruptcy Court by the Committee and the SBA against the Prepetition Secured Lenders and the Administrative Agent.

(w)        "Challenge Action Settlement" shall mean the settlement of the Challenge Action effected pursuant to that certain Settlement Agreement, dated as of June 16, 2010, by and among the Debtors, the SBA, the Committee, the Administrative Agent, and the Prepetition Secured Lenders.

(x)        "Chapter 11 Cases" means the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court by filing their Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code on September 30, 2008.

(y)        "Ciena Capital Funding" means Debtor Ciena Capital Funding, LLC.

(z)        "Claim" shall have the meaning ascribed to that term in section 101(5) of the Bankruptcy Code.

(aa)       "Claims Objection Deadline" means, unless extended by the Bankruptcy Court in a final and non-appealable order, for all Claims other than Cure Claims and Administrative Claims, the first Business Day that is 30 calendar days after the Effective Date.

(bb)       "Class" means a category, designated herein, of Claims or Interests that are substantially similar to the other Claims or Interests in such category as specified in Article IV of the Plan.

(cc)       "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

(dd)       "Confirmation" means the confirmation of the Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

(ee)       "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

(ff)       "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128(a) to consider Confirmation of the Plan in accordance with Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

(gg)       "Confirmation Order" means an order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance acceptable to the Debtors.

(hh)       "Conventional Settlement Fund" means the Cash distribution fund established pursuant to the Challenge Action Settlement for the benefit of the Holders of Allowed Claims against Debtor Ciena Capital Funding in an amount equal to (i) the sum of all Allowed Administrative, Priority and Other Secured Claims against Ciena Capital Funding plus (ii) $50,000.00.

(ii)       "Creditor" means the Holder of an Allowed Claim against any of the Debtors.

(jj)       "Cure Claim" means a Claim for any amount required to be paid under section 365(b)(1)(A) or 365(b)(1)(B) of the Bankruptcy Code as a result of the assumption of an executory contract or unexpired lease of a Debtor under a final and non-appealable order of the Bankruptcy Court or this Plan.

(kk)       "Cure Claims Dispute Deadline" means the first Business Day that is 30 calendar days after the Confirmation Date.

(ll)       "Cure Claims Schedule" means the schedule of Cure Claims included in the Plan Supplement, as it may be amended from time to time by the Debtors.

(mm)       "Debtors" means the Entities listed in Footnote 1 of this Plan.

(nn)       "Disallowed Claim" means (i) a Claim that has been disallowed by a final and non-appealable order of the Bankruptcy Court, (ii) a General Unsecured Claim, Priority Claim or Secured Claim for which no Proof of Claim was filed on or before the applicable Bar Date and that was either not listed in the Schedules or listed in the Schedules as disputed, contingent and/or unliquidated, (iii) an Administrative Claim for which no application or request for payment was filed on or before the Administrative Claims Bar Date, (iv) a Rejection Claim for which no Proof of Claim was filed on or before the Rejection Claims Bar Date, or (v) a Cure Claim to the extent that such Cure Claim (A) was not listed on the Cure Claim Schedule or exceeds the amount of such Cure Claim listed on the Cure Claim Schedule and (B) was not the subject of an objection to the Cure Claims Schedule filed prior to the Cure Claims Dispute Deadline in accordance with Section 5.3 of the Plan.

(oo)     "Disclosure Statement" means the written disclosure statement (including all exhibits and schedules thereto) that relates to the Plan, as the same may be amended, supplemented, revised or modified from time to time, as approved by the Bankruptcy Court, including without limitation all exhibits, appendices and schedules annexed thereto.

(pp)     "Disputed Claim" means a Claim that is neither an Allowed Claim nor a Disallowed Claim and shall include, without limitation, any Claim that is (i) not an Allowed Claim or a Disallowed Claim and (ii) either (A) was listed in the Schedules as disputed, contingent and/or unliquidated or (B) is the subject of a timely objection.

(qq)     "Effective Date" means the first Business Day (i) after the Confirmation Order becomes a Final Order and (ii) on which all conditions specified in Article VIII of the Plan have been satisfied or, if capable of being waived, have been waived in accordance with section 8.3 hereof.

(rr)     "Entity" shall have the meaning ascribed to that term in section 101(15) of the Bankruptcy Code.

(ss)     "Estate" means the bankruptcy estate of a Debtor created pursuant to section 541 of the Bankruptcy Code.

(tt)     "Exculpated Parties" means, collectively: (i) the Debtors and their respective officers, directors, employees, agents, members, shareholders, managers, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (ii) the Prepetition Secured Lenders and their respective officers, directors, employees, agents, members, shareholders, managers, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (iii) the Administrative Agent and its officers, directors, employees, agents, members, shareholders, managers, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (iv) the Committee and its constituent members and each of their respective agents, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (v) the disbursement agent, if any is appointed, under this Plan, solely in its capacity as such; and (vi) the successors, heirs, and assigns of each of the foregoing.

(uu)     "Face Amount" means with respect to an Allowed Claim, (i) the amount set forth on the Proof of Claim unless the Proof of Claim is filed in an unliquidated amount, (ii) if a Proof of Claim has been filed in an unliquidated amount, an amount determined in accordance with section 7.5(c) hereof, (iii) if no Proof of Claim has been filed, the amount of the Claim

listed in the Schedules, or (iv) the amount determined by a final and non-appealable order of the Bankruptcy Court.

(vv)     "FCA Action" means that certain Civil Action No. 1:04-CV-3789-TWT pending in the United States District Court for the Northern District of Georgia.

(ww)     "FCA Settlement" means the settlement of the FCA Action effected pursuant to (i) that certain Settlement Agreement, entered into between March 30, 2010, and April 6, 2010, by and among the United States of America, acting through the United States Department of Justice and on behalf of the SBA, the Debtors, Allied, Robert Tannenhauser, Michael Cohen, Jennifer Goldstein, Louis Hafkin, Matthew McGee and Joan Sweeney, and (ii) that certain Release Agreement, dated as of March 30, 2010, by and among James R. Brickman, Greenlight Capital, Inc, David Einhorn, the Debtors, Allied, Robert Tannenhauser, Michael Cohen, Jennifer Goldstein, Louis Hafkin, Matthew McGee and Joan Sweeney.

(xx)     "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

(yy)     "Final Order" means an order of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, that (i) has not been reversed, vacated, modified, amended or reconsidered and (ii) as to which (A) the time to file an appeal or motion to vacate, modify, amend or reconsider has expired and no appeal or motion to vacate, modify, amend or reconsider has been timely filed, (B) any appeal that has been filed has been resolved by the highest court to which the order appealed may be taken, or (C) an appeal or motion to vacate, modify, amend or reconsider has been timely filed, but has not yet been resolved and no stay pending such appeal or such motion to vacate, modify, amend or reconsider has issued.

(zz)     "General Unsecured Claim" means any Claim against a Debtor that is not an Administrative Claim, a Priority Claim, a Secured Claim, a Rejection Claim, or a Cure Claim.

(aaa)     "Governmental Units Claims Bar Date" means the deadline established in the Bar Date Order for Governmental Units to file General Unsecured Claims, Priority Claims, and Secured Claims, unless extended by a final and non-appealable order of the Bankruptcy Court

(bbb)     "Holder" means a Person or an Entity beneficially owning an Interest or a Claim.

(ccc)     "Impaired" means a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(ddd)     "Impaired Class" means a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

(eee)     "Intercompany Claim" means each Claim that (i) is against a Debtor and (ii) the Holder of which is another Debtor.

(fff)     "Interests" means any membership or other equity ownership interest in a Debtor or a Reorganized Debtor, as the context may warrant, and all dividends and distributions

with respect to such stock or interest and all rights, options, warrants (regardless of whether exercised), or other rights to acquire any stock or other equity ownership interest in a Debtor or a Reorganized Debtor, as the context may warrant.

(ggg)    "Lien" means a mortgage, a pledge, a judgment lien, an attachment, a security interest, or other encumbrance on any Assets, whether voluntary or involuntary, which is valid and enforceable under applicable non-bankruptcy law as of the Confirmation Date.

(hhh)    "Non-Governmental Unit Claims Bar Date" means the deadline established in the Bar Date Order for parties other than Governmental Units to file General Unsecured Claims, Priority Claims, and Secured Claims, unless extended by a final and non-appealable order of the Bankruptcy Court.

(iii)    "Operating Agreement" means the limited liability company operating agreement of a Reorganized Debtor that is a limited liability company, substantially in the form attached to the Plan Supplement.

(jjj)    "Other Secured Claims" means an Allowed Claim other than a Prepetition Secured Lender Claim that is secured by a Lien or is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Creditor's interest in the related assets or to the extent of the amount subject to setoff as determined pursuant to section 506(a) of the Bankruptcy Code.

(kkk)    "Parent Companies" shall mean Ciena Capital, LLC and BLX Holdings Corp.

(lll)    "Parent Settlement Fund" means the Cash distribution fund established pursuant to the Challenge Action Settlement for the benefit of the Holders of Allowed Claims against the Parent Companies in an amount equal to at least  (i) the sum of all Allowed Administrative, Priority and Other Secured Claims against the Parent Companies plus (ii) $3,291,524.

(mmm)    "Person" shall have the meaning ascribed to that term in section 101(41) of the Bankruptcy Code.

(nnn)    "Petition Date" means September 30, 2008, the date on which the Debtors filed their Voluntary Petitions for Relief Under Chapter 11 of the Bankruptcy Code.

(ooo)    "Plan" shall have the meaning ascribed to it in Article I of this Plan.

(ppp)    "Plan Documents" means the agreements, documents and instruments to be entered into on or as of the Effective Date, as contemplated by, and in furtherance of, the Plan, substantially in the forms contained in the exhibits to the Plan, the Disclosure Statement and the Plan Supplement, including without limitation the agreements comprising and/or effectuating the Settlements.

(qqq)    "Plan Supplement" means the compilation of documents and forms of documents and exhibits substantially in the forms filed not less than five days prior to the

deadline established by the Bankruptcy Court for casting Ballots, as such documents and exhibits may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(rrr)     "Prepetition Credit Facility" means that certain Second Amended and Restated Credit Agreement, dated March 17, 2006, as amended from time to time, by and among the Debtors, the Administrative Agent and the Prepetition Secured Lenders.

(sss)     "Prepetition Secured Lender Claims" mean Allowed Claims under the Prepetition Credit Facility that are secured by a Lien or are subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Creditor's interest in the related assets or to the extent of the amount subject to setoff as determined pursuant to section 506(a) of the Bankruptcy Code.

(ttt)     "Prepetition Secured Lenders" shall mean Ares Capital, as successor to Allied Capital, and Citibank, N.A.

(uuu)     "Priority Claims" means all Priority Non-Tax Claims and all Priority Tax Claims.

(vvv)     "Priority Non-Tax Claims" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

(www)     "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(xxx)     "Professional Fees" means the compensation and reimbursement of expenses allowed to (a) Professionals pursuant to sections 330 or 331 of the Bankruptcy Code or (b) any Person or Entity making a claim for compensation and reimbursement of expenses under section 503(b) of the Bankruptcy Code.

(yyy)     "Professionals" means an Entity or a Person employed pursuant to a final and non-appealable order of the Bankruptcy Court in accordance with section 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered and reimbursed for expenses incurred prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

(zzz)     "Proof of Claim" means any written statement filed under oath in the Chapter 11 Case by the Holder of a Claim, other than an Administrative Claim, which statement (1) conforms substantially to Official Form 10, (2) states the amount owed and sufficiently identifies the basis of such Holder's Claim, and (3) attaches or sufficiently identifies all documentation evidencing or otherwise supporting the Claim.

(aaaa)     "Ratable Portion" means with reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a

percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

(bbbb)     "Reinstated" means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (A) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (B) reinstating the maturity of such Claim as such maturity existed before such default, (C) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law and (D) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim.

(cccc)     "Rejection Claim" means any Claim against a Debtor for damages arising as a proximate result of the rejection of an executory contract or an unexpired lease to which such Debtor is a party under section 365 of the Bankruptcy Code pursuant to the Plan or separate motion.

(dddd)     "Rejection Claims Bar Date" means, unless otherwise extended by a final and non-appealable order of the Bankruptcy Court, the later of (i) the first Business Day that is 30 calendar days after the Confirmation Date and (ii) the first Business Day that is 30 calendar days after the Bankruptcy Court enters an order approving the rejection of the executory contract or unexpired lease that gives rise to the Rejection Claim at issue.

(eeee)     "Rejection Schedule" shall mean the schedule of contracts to be rejected under the Plan in the Plan Supplement.

(ffff)     "Release Opt-Out Election" means the right of each Holder of an Allowed Claim to elect to opt out of providing the Third-Party Releases by checking the appropriate box on the Ballot received by such Holder.

(gggg)     "Released Parties" means, collectively: (i) the Debtors and their respective officers, directors, employees, agents, members, shareholders, managers, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (ii) the Prepetition Secured Lenders and their respective officers, directors, employees, agents, members, shareholders, managers, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (iii) the Administrative Agent and its officers, directors, employees, agents, members, shareholders, managers, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (iv) the Committee and its constituent members and each of their

respective agents, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), solely in their respective capacities as such, and only if such Persons occupied any such positions at any time on or after the Petition Date; (v) the disbursement agent, if any is appointed, under this Plan, solely in its capacity as such; and (vi) the successors, heirs, and assigns of each of the foregoing.

(hhhh) "Reorganized Debtor" means the applicable Debtor after the Effective Date and any successors thereto, by merger, consolidation or otherwise, as reorganized on and after the Effective Date.

(iiii) "Restructured Credit Facility" means the three separate promissory notes that shall be issued to the Prepetition Secured Lenders on the Effective Date as follows: (i) Business Loan Center, LLC, BLC Real Estate, LLC and BLC Real Estate (Texas), LLC jointly and severally shall issue a promissory note in the original principal amount of $25 million, (ii) Ciena Capital Funding shall issue a promissory note in the original principal amount of $10 million, and (iii) BLX Commercial Capital Real Estate, LLC shall issue a promissory note in the original principal amount of $2 million. Each of the promissory notes comprising the Restructured Credit Facility shall have a five-year term and shall bear interest at the rate of 12% per annum. Interest on the Restructured Credit Facility shall be payable on the first of each month in Cash or, at the Debtors' option, 50% in Cash and 50% payment-in-kind ("PIK"). Principal shall be payable in five equal installments, each on the anniversary of the Effective Date of the Plan. Each of the promissory notes comprising the Restructured Credit Facility shall be secured by first security interests in and liens on all of the Assets and shall otherwise be on the terms and conditions set forth in the Plan Supplement.

(jjjj) "Revolving Credit Facility" means the unsecured revolving credit facility provided by Allied to the Debtors on the Effective Date in the maximum outstanding principal amount of $20 million and otherwise containing the terms and conditions set forth in the Plan Supplement.

(kkkk) "SBA" shall mean the United States Small Business Administration.

(llll) "SBA Settlement" means the settlement effected pursuant to that certain Settlement and Plan Support Agreement, dated as of May 5, 2010, by and among the Debtors, Allied, and the SBA.

(mmmm) "SBA Settlement Fund" means the Cash distribution fund established pursuant to the Challenge Action Settlement Agreement for the benefit of the Holders of Allowed Claims against Debtor Business Loan Center, LLC in an amount equal to at least (i) the sum of all Allowed Administrative, Priority and Other Secured Claims against Debtor Business Loan Center, LLC plus (ii) $11,081,910.

(nnnn) "Schedules" means the schedules, if any, of assets and liabilities, schedules of executory contracts, and the statements of financial affairs of the Debtors filed pursuant to Section 521 of the Bankruptcy Code, in each case as they may be amended from time to time by the Debtors.

(oooo) "Secured Claim" means a Claim that is either a Prepetition Secured Lender Claim or an Other Secured Claim.

(pppp) "Settlements" means the Challenge Action Settlement, the FCA Settlement and the SBA Settlement.

(qqqq) "Settlement Funds" mean the SBA Settlement Fund, the Conventional Settlement Fund, the Parent Settlement Fund, and the Agricultural Settlement Fund.

(rrrr) "Subordinated Claim" means (i) any Claim against a Debtor, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent that such attorneys' fees are punitive in nature), multiple, exemplary or punitive damages, or that does not represent compensation for actual pecuniary loss suffered by the holder of such Claim, (ii) all Claims against any of the Debtors of the type described in section 510(b) of the Bankruptcy Code, (iii) all Intercompany Claims, and (iv) all General Unsecured Claims of the Prepetition Secured Lenders arising under section 506(a)(1) of the Bankruptcy Code.

(ssss) "Third-Party Releases" shall have the meaning parenthetically ascribed to that phrase in Section 10.1(b) of this Plan.

(tttt) "Unclassified Claim" means a Claim that is not classified under the Plan, viz., Administrative Claims and Priority Tax Claims.

(uuuu) "Undistributed Settlement Amount" means (i) any portion of a Settlement Fund that is not distributed as a result of a Holder's exercise of the Release Opt-Out Election, (ii) any undistributed portion of the Ares Gift Fund, and (iii) any undeliverable distributions as determined in section 7.4(c) of this Plan.

(vvvv) "Unimpaired" means a Claim that is not Impaired.

(wwww) "Unsecured Claimant Portion" means that portion of a Settlement Fund remaining after the payment of all Allowed Administrative, Priority and Other Secured Claims against the applicable Debtor or Debtors.

2.5 **Exhibits**

All exhibits to the Plan are incorporated by reference and made a part of the Plan as if fully set forth herein.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.1 **Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Allowed Administrative Claim shall be paid by the applicable Debtor or Reorganized Debtor, as the case may be, in full, in Cash, upon the latest of (i) the Effective

Date, (ii) the date upon which there is a final and non-appealable order of the Bankruptcy Court allowing such an Allowed Administrative Claim, and (iii) the date set forth in an agreement governing or documents evidencing such an Allowed Administrative Claim; provided, however, that Allowed Administrative Claims for goods or non-professional services provided to a Debtor during the Chapter 11 Cases in the ordinary course of such Debtor's business shall be paid or performed in accordance with the terms and conditions of the particular transactions and any agreements relating thereto.

Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtors and counsel for the Reorganized Debtors no later than the Administrative Claims Bar Date. Any Person or Entity that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such a request shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.

The applicable Reorganized Debtor, in its sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. Any Reorganized Debtor or any other party with standing shall have the right to object to any Administrative Claim by filing and serving on the appropriate parties, including the claimant, an objection to such an Administrative Claim on or before the Administrative Claims Objection Deadline. Unless a Reorganized Debtor or another party with standing objects to an Administrative Claim on or before the Administrative Claims Objection Deadline, such an Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested. In the event that a Reorganized Debtor or another party with standing timely files and serves an objection to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, shall submit the matter to the Bankruptcy Court for a determination of whether an Administrative Claim should be allowed, and if so, in what amount.

The payments, distributions and other treatment afforded to Holders of Allowed Administrative Claims under this section shall be in full and complete satisfaction, discharge and release of such Allowed Claims.

3.2 **Professional Fees**

Claims for Professional Fees are treated in all respects as Administrative Claims under the Plan and, thus, subject to both the Administrative Claims Bar Date and the Administrative Claims Objection Deadline. The Debtors or Reorganized Debtors, as the case may be, may pay the charges incurred by the Debtors' Professionals on or after the Confirmation Date for Professionals' fees, disbursements, expenses, or related support services (including fees and expenses related to the preparation of the Debtor Professionals' fee applications) without application to, or approval of, the Bankruptcy Court.

3.3 **Priority Tax Claims**

Except to the extent that a Holder of a Priority Tax Claim agrees to less favorable treatment, each Allowed Priority Tax Claim shall be paid by the applicable Debtor or

Reorganized Debtor, as the case may be, in full, in Cash, upon the latest of (i) the Effective Date, (ii) the date upon which there is a final and non-appealable order of the Bankruptcy Court allowing such Priority Tax Claim, and (iii) the date upon which such an Allowed Priority Tax Claim would have been due and payable if the Chapter 11 Cases had not been commenced. The payments, distributions and other treatment afforded to Holders of Allowed Priority Tax Claims under this section shall be in full and complete satisfaction, discharge and release of such Allowed Claims.

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

4.1     **Classification Rules**

The categories of Claims and Interests below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

4.2     **Summary of Classification and of Claims and Interests**

| Class | Claim | Status | Voting Right |
|-------|-------|--------|--------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 2 | Prepetition Secured Lender Claims | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims against Business Loan Center, LLC, BLC Real Estate, LLC or BLC Real Estate (Texas), LLC | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims against Parent Companies | Impaired | Entitled to Vote |

| 6 | General Unsecured Claims against Ciena Capital Funding | Impaired | Entitled to Vote |
|---|---|---|---|
| 7 | General Unsecured Claims against BLX Commercial Capital, LLC | Impaired | Entitled to Vote |
| 8 | Subordinated Claims | Impaired | Deemed to Reject; Not Entitled to Vote |
| 9 | Interests in Debtors | Impaired | Deemed to Reject; Not Entitled to Vote |

### 4.3 Classification and Treatment of Claims and Interests

Claims (except for Administrative Claims and Priority Tax Claims, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) and Interests are classified and treated as follows:

(a) **Class 1 -- Priority Non-Tax Claims**

(i) *Classification*: Class 1 consists of Priority Non-Tax Claims against any of the Debtors.

(ii) *Treatment*: Unless a Holder of an Allowed Priority Non-Tax Claim and the applicable Debtor agree to a different treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive one of the following treatments, at the sole election of the applicable Debtor: (A) to the extent then due and owing on the Effective Date, such Allowed Priority Non-Tax Claim will be paid in full on the Effective Date, or as soon reasonably practicable thereafter, in Cash, by the applicable Reorganized Debtor; (B) to the extent not due and owing on the Effective Date, such Allowed Priority Non-Tax Claim will be paid in full, in Cash, by the applicable Reorganized Debtor when and as such Allowed Priority Non-Tax Claim becomes due and owing in the ordinary course of business in accordance with the terms thereof; or (C) such Allowed Priority Non-Tax Claim will be otherwise treated in any manner such that Class 1 shall not be Impaired.

(iii) *Voting*: Class 1 is Unimpaired. Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

(b) **Class 2 -- Prepetition Secured Lender Claims**

(i) *Classification*: Class 2 consists of Prepetition Secured Lender Claims against the Debtors.

(ii)     *Treatment*:  The Prepetition Secured Lender Claims shall be bifurcated pursuant to section 506(a) of the Bankruptcy Code and treated as Allowed Prepetition Secured Lender Claims in the amount of $100 million and the remaining balance of the Prepetition Secured Lender Claims shall be treated as Allowed Subordinated Claims.  In full and complete satisfaction, settlement, discharge and release of the Allowed Prepetition Secured Lender Claims, on the Effective Date or as soon as reasonably practicable thereafter, Holders of the Allowed Prepetition Secured Lender Claims shall receive their Ratable Portion of (i) the Restructured Credit Facility; and (ii) 100% of the Interests in the Reorganized Debtors.  Holders of Allowed Prepetition Secured Lender Claims may designate another Entity to hold the Interests in any Reorganized Debtor.

(iii)     *Voting*:  Class 2 is Impaired.  Holders of the Allowed Prepetition Secured Lender Claims are entitled to vote to accept or reject the Plan.

(c)     **Class 3 -- Other Secured Claims**

(i)     *Classification*:  Class 3 consists of Allowed Other Secured Claims against any of the Debtors.

(ii)     *Treatment*:  Holders of Allowed Other Secured Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Other Secured Claims, on the Effective Date or as soon thereafter as reasonably practicable, a promissory note made by the applicable Debtor in the original principal amount equal to the amount of such Allowed Other Secured Claim, bearing interest at the rate of the higher of (i) the contractual rate and (ii) 6%, and payable in twelve (12) equal monthly installments commencing on the first Business Day of the first calendar month following the Effective Date.

(iii)     *Voting*:  Class 3 is impaired.  Holders of Allowed Other Secured Claims are entitled to vote to accept or reject the Plan.

(d)     **Class 4 -- General Unsecured Claims (BLC)**

(i)     *Classification*:  Class 4 consists of Allowed General Unsecured Claims and Rejection Claims against Debtors Business Loan Center, LLC, BLC Real Estate, LLC or BLC Real Estate (Texas) LLC.  Holders of Allowed Class 4 Claims that do not exercise the Release Opt-Out Election are classified as Class 4(a) Claims.  Holders of Allowed Class 4 Claims that do exercise the Release Opt-Out Election are classified as Class 4(b) Claims.

(ii)     *Treatment*:  Holders of Allowed Class 4(a) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to their Ratable Portion of the Unsecured Claimant Portion of the SBA Settlement Fund.  Holders of Allowed Class 4(b) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to 10% of their Ratable Portion of the Unsecured Claimant Portion of the SBA Settlement Fund; the other 90% of such Ratable Portion shall constitute an Undistributed Settlement Amount.

(iii)    *Voting:*  Class 4 is Impaired.  Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

(e)    **Class 5 -- General Unsecured Claims (Parent)**

(i)    *Classification:*  Class 5 consists of Allowed General Unsecured Claims and Rejection Claims against either of the Parent Companies.  Holders of Allowed Class 5 Claims that do not exercise the Release Opt-Out Election are classified as Class 5(a) Claims.  Holders of Allowed Class 5 Claims that do exercise the Release Opt-Out Election are classified as Class 5(b) Claims.

(ii)    *Treatment:*  Holders of Allowed Class 5(a) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to their Ratable Portion of the Unsecured Claimant Portion of the Parent Settlement Fund.  Holders of Allowed Class 5(a) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to 10% of their Ratable Portion of the Unsecured Claimant Portion of the Parent Settlement Fund; the other 90% of such Ratable Portion shall constitute an Undistributed Settlement Amount.

(iii)    *Voting:*  Class 5 is Impaired.  Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

(f)    **Class 6 -- General Unsecured Claims (Conventional)**

(i)    *Classification:*  Class 6 consists of Allowed General Unsecured Claims and Rejection Claims against Ciena Capital Funding.  Holders of Allowed Class 6 Claims that do not exercise the Release Opt-Out Election are classified as Class 6(a) Claims, and Holders of Allowed Class 6 Claims that do exercise the Release Opt-Out Election are classified as Class 6(b) Claims.

(ii)    *Treatment:*  Holders of Allowed Class 6(a) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to the sum of (i) their Ratable Portion of the Unsecured Claimant Portion of the Conventional Settlement Fund and (ii) a distribution from the Ares Gift Fund in an amount equal to the lesser of (x) 50% of the amount of such Holder's Allowed Class 6(a) Claim and (y) $50,000.  Holders of Allowed Class 6(b) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to 10% of their Ratable Portion of the Unsecured Claimant Portion of the Conventional Settlement Fund and no distribution whatsoever from the Ares Gift Fund; the other 90% of such Ratable Portion and the distribution from the Ares Gift Fund that was not made on account of such Holder's Allowed Class 6(a) Claim shall constitute an Undistributed Settlement Amount.

(iii)    *Voting:*  Class 6 is Impaired.  Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

(g)     **Class 7 -- General Unsecured Claims (Agricultural)**

(i)     *Classification:*  Class 7 consists of Allowed General Unsecured Claims and Rejection Claims against BLX Commercial Capital, LLC.  Holders of Allowed Class 7 Claims that do not exercise the Release Opt-Out Election are classified as Class 7(a) Claims. Holders of Allowed Class 7 Claims that do exercise the Release Opt-Out Election are classified as Class 7(b) Claims.

(ii)     *Treatment:*  Holders of Allowed Class 7(a) Claims shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to their Ratable Portion of the Unsecured Claimant Portion of the Agricultural Settlement Fund.  Holders of Allowed Class 7(b) Claims that make the Release Opt-Out Election shall receive, in full and complete satisfaction, settlement, discharge and release of such Claims, on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to 10% of their Ratable Portion of the Unsecured Claimant Portion of the Agricultural Settlement Fund; the other 90% of such Ratable Portion shall constitute an Undistributed Settlement Amount.

(iii)     *Voting:*  Class 7 is Impaired.  Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan.

(h)     **Class 8 - Subordinated Claims**

(i)     *Classification*:  Class 8 consists of Subordinated Claims.

(ii)     *Treatment*:  On the Effective Date, all Subordinated Claims shall be discharged, and no Holder of a Subordinated Claim shall receive or retain any distribution or property on account of such Subordinated Claim.

(iii)     *Voting*:  Class 8 is Impaired.  Holders of Subordinated Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

(i)     **Class 9 -- Interests in Debtors**

(i)     *Classification*:  Class 9 consists of the Allowed Interests in the Debtors.

(ii)     *Treatment*:  On the Effective Date, all Allowed Interests in the Debtors shall be indefeasibly cancelled and extinguished.

(iii)     *Voting*:  Class 9 is Impaired.  Holders of Allowed Interests in the Debtors are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

### 4.4    Full Satisfaction, Discharge and Release

The payments, distributions and other treatment afforded to Holders of Allowed Claims and Interests under this Article IV shall be in full and complete satisfaction, settlement discharge and release of such Allowed Claims and Interests.

### 4.5    Cancellation of Existing Agreements and Securities

Except to the extent Reinstated or left Unimpaired under the Plan, or for the purposes of evidencing a right to distribution under the Plan, on the Effective Date, all the agreements or other documents evidencing any Claims or rights of any Holder of a Claim against any Debtor, including all indentures, credit agreements, security agreements and promissory notes evidencing such Claims, and any Interests in a Debtor, options or warrants (regardless of whether exercised) to purchase Interests in a Debtor, shall be deemed canceled, surrendered to the applicable Debtor, and of no further force or effect.

### 4.6    Miscellaneous

(a)    Notwithstanding any other provision of the Plan, the principal amount of any Allowed Claim shall be reduced by the amount, if any, that was paid by a Debtor to the Holder of such Claim prior to the Effective Date, including pursuant to a final and non-appealable order entered by the Bankruptcy Court.  Nothing in the Plan shall preclude a Reorganized Debtor from paying claims that the related Debtor was authorized to pay pursuant to any final and non-appealable order entered by the Bankruptcy Court prior to the Confirmation Date.

(b)    Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Bankruptcy Court or any document or agreement entered into and enforceable pursuant to the terms of this Plan, nothing shall affect a Debtor's or a Reorganized Debtor's Causes of Action, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to, and setoffs and recoupments against Unimpaired Claims and all Causes of Action for the affirmative relief against the Holders thereof.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1    Treatment of Executory Contracts and Unexpired Leases

As of and subject to the occurrence of the Effective Date of the Plan and the payment of any Cure Claim as and when required hereunder, each executory contract or unexpired lease to which any Debtor is a party shall be deemed assumed except that for any executory contracts and unexpired leases that (i) previously have been assumed or rejected pursuant to a final and non-appealable order of the Bankruptcy Court, (ii) are listed specifically or by category on the Rejection Schedule or (iii) are the subject of a pending motion to assume or reject as of the Effective Date.

5.2     **Rejection Claims**

All Rejection Claims that have not been Allowed by a final and non-appealable of the Bankruptcy Court prior to the Confirmation Date shall be filed on or before the Rejection Claims Bar Date. Rejection Claims that have not been Allowed by a final and non-appealable order of the Bankruptcy Court and are not filed on or before the Rejection Claims Bar Date shall be disallowed and discharged in their entirety without further order of or process before the Bankruptcy Court. Allowed Rejection Claims shall be classified and treated as General Unsecured Claims in Class 4, 5, 6 or 7, as applicable.

5.3     **Cure Claims**

All Cure Claims known to the Debtors that have not been Allowed by a final and non-appealable order of the Bankruptcy Court prior to the Confirmation Date shall be listed by the Debtors on the Cure Claim Schedule. Holders that disagree with the amount of a Cure Claim on the Cure Claim Schedule or assert a Cure Claim that is not listed on the Cure Claim Schedule shall file an objection to the Cure Claim Schedule with the Bankruptcy Court and serve such objection on the appropriate parties, including counsel for the Debtor and the Committee, prior to the Cure Claims Dispute Deadline. Any Cure Claim that has not been Allowed by a final and non-appealable order of the Bankruptcy Court, was not listed on the Cure Claim Schedule, and was not the subject of an objection to the Cure Claims Schedule filed prior to the Cure Claims Dispute Deadline, shall be Disallowed in its entirety. Any Cure Claim that has not been Allowed by a final and non-appealable order of the Bankruptcy Court, exceeds the amount of such Cure Claim listed on the Cure Claim Schedule, and was not the subject of an objection the Cure Claims Schedule filed prior to the Cure Claims Dispute Deadline, shall be Disallowed to the extent such Cure Claim exceeds the amount set forth on the Cure Claims Schedule.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1     **Revolving Credit Facility**

On the Effective Date, Allied shall provide the Revolving Credit Facility, which shall be available and used for paying ordinary operating expenses as well as for making distributions called for by the Plan.

6.2     **Restructured Credit Facility**

On the Effective Date, the Debtors shall execute and deliver the documents comprising the Restructured Credit Facility to the Prepetition Secured Lenders.

6.3     **Settlements**

On the Effective Date, the parties to the Settlements shall perform their respective obligations thereunder, and otherwise consummate the transactions contemplated thereby.

### 6.4 Execution of Related Documents

On the Effective Date, all Plan Documents entered into or instruments issued in connection with any of the foregoing or any other Plan Document shall be delivered and executed by the Reorganized Debtors, and shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto and as specified herein.

### 6.5 Governance of the Reorganized Debtors

(a) *Operating Agreements and Charters.* On the Effective Date, the Reorganized Debtors shall adopt revised Operating Agreements and corporate charters, as applicable, in substantially the form included in the Plan Supplement. All of the outstanding Interests in the Reorganized Debtors will be issued to and held by the Prepetition Secured Lenders or their designees. Following the Effective Date, the Reorganized Debtors may amend and restate their Operating Agreements, corporate charters, and other constituent documents as permitted by state law.

(b) *Managers, Directors and Officers.* Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Disclosure Statement, on the Effective Date, the managers and officers who are identified in the Plan Supplement shall serve as the initial Board of Managers and officers of the Reorganized Debtors that are limited liability companies. Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as may otherwise be disclosed in the Disclosure Statement, on the Effective Date, the directors and officers who are identified in the Plan Supplement shall serve as the initial Board of Directors and officers of the Reorganized Debtors that are corporations. Pursuant to Bankruptcy Code section 1129(a)(5), the Debtors will disclose in the Plan Supplement, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on a Reorganized Debtor's Board of Managers or Board of Directors and, to the extent such Person is an insider, the nature of any compensation for such Person. After the Effective Date, the corporate governance and management of the Reorganized Debtor shall be determined by the applicable Board of Managers or Board of Directors in accordance with the laws of the applicable state of organization.

### 6.6 Elimination of Classes

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for the purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 6.7 Release of Liens

On or before the Effective Date, Citibank, N.A., as Administrative Agent, shall file a notice or other public statement as is necessary or appropriate to evidence the termination of the Liens formerly held by the Prepetition Secured Lenders and the termination of any financing

statements relating to any and all Liens on the Debtors' Assets under or in connection with the Prepetition Credit Facility. In addition, each Reorganized Debtor is hereby appointed as attorney-in-fact for each party whose Lien is terminated hereunder, with full power and authority to execute on behalf of such party any notices or other public statements as are necessary or appropriate to evidence the termination of such party's Lien and any financing statement relating to any and all security interests in the Assets.

### 6.8  Indemnification of Directors, Managers, Officers and Employees

The obligations of each Debtor to indemnify any Person serving at any time on or prior to the Effective Date as one of its directors, managers, officers or employees by reason of such Person's service in such capacity, or as a director, a manager, an officer, a partner, a trustee, an employee or an agent of such Debtor to the extent provided in such Debtor's constituent documents, by a written agreement with such Debtor or applicable state law, each as applicable, shall be deemed and treated as executory contracts that are assumed by the applicable Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall survive unimpaired and unaffected by the entry of the Confirmation Order and the occurrence of the Effective Date, irrespective of whether such indemnification is owed for an act or an event occurring before or after the Petition Date, except if such Claim or liability is determined by a final and non-appealable order of the Bankruptcy Court to have resulted from gross negligence, willful misconduct, fraud or criminal conduct of such indemnified Person.

### 6.9  United States Trustee Fees

The Reorganized Debtors shall pay quarterly fees to the Office of the United States Trustee until their Chapter 11 Cases are closed under section 350 of the Bankruptcy Code and provide relevant reports to show the amount of such fee that is due.

### 6.10  Revocation and Withdrawal of the Plan

The Debtors reserve the right to revoke or withdraw the Plan at any time before entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan prior to the Confirmation Hearing, or if Confirmation of the Plan or the Effective Date does not occur, then the Plan shall be deemed to be null and void as to the Debtors' Estates. In such an event, nothing contained in the Plan or in any document relating to the Plan shall be deemed to constitute an admission of validity, waiver or release of any Claims by or against the Debtors or any Person or any Entity or to prejudice in any manner the rights of the Debtors or any Person or any Entity in any proceeding involving the Debtors.

### ARTICLE VII
### PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1  Objections

All objections to Claims other than Cure Claims and Administrative Claims shall be filed by the Claims Objection Deadline or shall be forever barred.

7.2    **Estimation of Claims**

A Debtor (prior to the Effective Date) or Reorganized Debtor (after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim asserted by any Person or Entity, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, a Debtor (prior to the Effective Date) or a Reorganized Debtor (after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.3    **Distribution for Claims Allowed as of the Effective Date**

Except as provided in this Article VII or as may be ordered by the Bankruptcy Court, distributions to be made to Holders of Allowed Claims on the Effective Date that are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter.  Distributions on account of Disputed Claims that become Allowed Claims after the Effective Date shall be made pursuant to section 7.5 below.

7.4    **Delivery of Distributions; Undeliverable Distributions**

(a)    Subject to section 7.4(c) of the Plan, distributions to Holders of Allowed Claims shall be made (i) at the addresses set forth on the respective Proofs of Claim filed by such Holders, (ii) at the addresses set forth in any written notices of address change delivered to any of the Debtors or Reorganized Debtors after the date on which the related Proof of Claim was filed, or (iii) at the addresses reflected in the Debtors' Schedules if no Proof of Claim has been filed and neither of the applicable Debtor nor the Reorganized Debtor has received a written notice of a change of address.

(b)    If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtor shall have no obligation to make any further distribution to the Holder, unless and until the Reorganized Debtor is notified in writing of such Holder's then current address.  Subject to section 7.4(c) of the Plan, the Reorganized Debtor shall retain undeliverable distributions until such time as a distribution becomes deliverable.

(c)    Any Holder of an Allowed Claim who does not assert a claim for an undeliverable distribution within one year after the Effective Date on account of such Claim shall no longer

have any claim to or interest in such undeliverable distribution, shall be forever barred and enjoined from receiving any distribution under the Plan, shall be forever barred and enjoined from asserting any such Claim against the Reorganized Debtor and its property, and such amount shall constitute an Undistributed Settlement Amount.

7.5     **Disputed Claims**

(a)     No distribution or other payment or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a final and non-appealable order of the Bankruptcy Court, by a stipulation between the applicable Debtor and the Holder of the Claim, or by a stipulation between the Reorganized Debtor and the Holder of the Claim.  No distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

(b)     If such Holder's Claim ever becomes an Allowed Claim, the Debtor that is the obligor in respect of such Claim shall have a recourse obligation to pay to such Holder the entire amount of the distribution on account of such Allowed Claim to which such Holder would have been entitled to under the Plan.

(c)     As to any Disputed Claim for which a Proof of Claim has been filed in an unliquidated amount or for which a Proof of Claim has been filed that denominates the Claim as contingent, the Bankruptcy Court shall, upon a motion by the applicable Debtor or Reorganized Debtor to be filed on or before Claims Objection Deadline, estimate the maximum allowable amount, if any, of such Disputed Claim under section 502(c) of the Bankruptcy Code.  Any final and non-appealable order of the Bankruptcy Court that estimates a Disputed Claim pursuant to section 7.2 and this section 7.5(c) irrevocably shall constitute and be a conclusive and final determination of the maximum allowable amount of the Claim of such Creditor, should it become an Allowed Claim.  After the estimation of the maximum allowable amount of the Claim of such Creditor, the Debtor or Reorganized Debtor may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim.

The Holder of a Disputed Claim that is estimated by the Bankruptcy Court pursuant to section 7.2 and this section 7.5(c) shall not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or an actual determination of the Allowed amount of such a Disputed Claim or otherwise, and the Holder of such a Claim shall <u>not</u> have recourse to the Debtors or Reorganized Debtors, or any of their Assets in the event the allowed amount of the Holder's Claim is at any time later determined to exceed the estimated maximum allowable amount.

(d)     Within ten Business Days following the date that a Disputed Claim  becomes an Allowed Claim after the Effective Date, the Reorganized Debtors shall pay directly to the Holder of such an Allowed Claim the amount provided for under Articles III or IV of the Plan, as applicable.

7.6 **Prosecution of Objections to Claims**

After the Confirmation Date, the applicable Reorganized Debtor shall have the exclusive authority and standing to file, settle, compromise, withdraw or litigate to judgment objections to any Claims, and may settle or compromise any Disputed Claim without the approval of the Bankruptcy Court. All Disputed Claims shall be determined, resolved or adjudicated in the manner in which such Claims would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced, unless the Reorganized Debtor, by its election, chooses to determine, resolve or adjudicate in the Bankruptcy Court any Disputed Claims arising in the Chapter 11 Cases.

7.7 **Disbursement of Funds**

The Reorganized Debtors or their duly appointed disbursing agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution to Creditors shall be held in trust for the exclusive benefit of the Holders of Allowed Claims and shall not be subject to any claim by any Person or Entity except as provided under the Plan.

7.8 **Direction to Parties**

From and after the Effective Date, a Debtor or Reorganized Debtor may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver, or to join in the execution or delivery, of any instrument required to effect a transfer of property required under the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

7.9 **Setoffs and Recoupments**

A Debtor or Reorganized Debtor may, to the extent permitted under applicable law, setoff or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that a Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim; provided however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or a release by the applicable Debtor or Reorganized Debtor of any such claims, rights and Causes of Action that a Debtor or Reorganized Debtor may possess against such Holder.

7.10 **No Recourse**

No Holder of any Disputed Claim that becomes an Allowed Claim in any applicable Class shall have recourse against the disbursing agent, the Debtors, the Reorganized Debtors, or any other Holder of an Allowed Claim or any of their respective professional consultants, advisors, officers, directors or members or their successors or assigns, or any of their respective property, if the Cash or Interests allocated to such Class and not previously distributed are

insufficient to provide a distribution to such Holder in the same proportion to that received by other Holders of Allowed Claims in such Class. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code.

### 7.11    Manner of Payment Under Plan of Reorganization

At the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

### 7.12    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of any such Claim any distribution in excess of the Allowed amount of such Claim.

### 7.13    Treatment of the Undistributed Settlement Amounts

All Undistributed Settlement Amounts shall be used by the Reorganized Debtors first to reduce the outstanding balance, if any, of the Revolving Credit Facility, and second, to reduce the outstanding balance, if any, of the Restructured Credit Facility.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND EFFECTIVE DATE OF THE PLAN

### 8.1    Condition Precedents to Confirmation

It shall be a condition to Confirmation of the Plan that all provisions, terms and conditions of the Plan shall have been approved in the Confirmation Order or waived pursuant to the provisions of section 8.3 below. It is a further condition to Confirmation of the Plan that the Plan, Plan Documents, Plan Supplement, Disclosure Statement and Confirmation Order all be in form and substance reasonably satisfactory to the Administrative Agent and Prepetition Secured Lenders.

### 8.2    Conditions Precedent to the Effective Date

(a)    The Confirmation Order shall have been approved by the Bankruptcy Court and duly entered on the docket for the Chapter 11 Cases by the Clerk of the Bankruptcy Court, shall not have been modified without the consent of the Debtors, shall not be subject to a pending motion brought pursuant to section 1144 of the Bankruptcy Code and shall have become a Final Order;

(b)    The Settlements shall have been approved by the Bankruptcy Court in one or more Final Orders;

(c)     There shall not be in effect any order, law or regulation staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan;

(d)     Any and all necessary governmental, regulatory and third-party approvals, waivers and/or consents with respect to the Settlements have been obtained, effected and/or executed and remain in full force and effect;

(e)     All statutory fees then owed to the United States Trustee shall have been paid in full; and

(f)     All other actions and documents necessary to implement the provisions of the Plan on the Effective Date shall have been, respectively, effected or duly executed and delivered.

### 8.3    **Waiver of Conditions**

The Debtors may waive any of the conditions precedent to Confirmation of the Plan set forth in section 8.1 above and the conditions precedent to occurrence of the Effective Date set forth in section 8.2 above, at any time, without notice, without leave or an order of the Bankruptcy Court, and without any formal action other than a proceeding to confirm and/or consummate the Plan.

### 8.4    **Effect of Non-Occurrence of Conditions Precedent to the Effective Date**

If the conditions precedent to occurrence of the Effective Date have not been satisfied or waived in accordance with this Article VIII on or before the first Business Day that is more than 60 days after the Confirmation Date or by such later date as is approved by the Bankruptcy Court after notice and a hearing, then on a motion by the Debtors made prior to the time that all of the conditions precedent have been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order and the Confirmation Order shall be of no force and effect.  Notwithstanding the foregoing, the Confirmation Order shall not be vacated if all of the conditions to the occurrence of the Effective Date set forth in this Article VIII are either satisfied or waived, in accordance with the terms hereof, prior to the entry by the Bankruptcy Court of an order granting the relief requested in such motion.

If the Confirmation Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or a release of any Claims by or against the Debtors or any Interests in the Debtors; (ii) prejudice in any manner the rights of the Debtors; or (iii) constitute an admission, an acknowledgment, an offer or an undertaking by the Debtors in any respect.

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

9.1     **Vesting of Assets in Reorganized Debtors**

Except as otherwise provided in the Plan or any agreement, instrument or indenture relating thereto, on the Effective Date, all property of the Debtors' Estates, and any property acquired by such Debtors or Reorganized Debtors under the Plan, shall vest in the applicable Reorganized Debtor, in accordance with sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims, Liens, charges, or other encumbrances and interests. On or after the Effective Date, the Reorganized Debtors may operate their respective businesses and may use, acquire, or dispose of property and compromise or settle any Claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, all rights, privileges, entitlements, authorizations, grants, permits, licenses, easements, franchises and other similar items which constitute part of, or are necessary or useful in the operation of, the property of the Debtors' Estates or the business of the Reorganized Debtors, whether in the United States or elsewhere, shall be vested in the Reorganized Debtor to the same and full extent they would have been exercisable and usable by the applicable Debtor before the Petition Date.

9.2     **Discharge of Claims Against the Debtors and Cancellation of Interests**

Except as otherwise provided herein or in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, (i) the rights afforded in the Plan, and the treatment of all Claims and Interests therein, shall be in exchange for and in complete satisfaction, discharge and release of Claims and Interests of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred on such Claims from and after the Petition Date, against the Debtors, the Reorganized Debtors, or any of their Estates, Assets or properties, (ii) on the Effective Date, all such Claims against the Debtors, and Interests shall be satisfied, discharged and released in full, and (iii) all Entities and Persons shall be precluded from asserting against the Reorganized Debtors, their successors or their assets or properties any other or further Claims or Interests based upon any act of omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. For purposes of clarity, all Disputed Claims shall be determined, resolved or adjudicated in accordance with the terms of Article VII hereof. On the Effective Date, the Interests shall be deemed extinguished, canceled and of no further force or effect without any further act or action under any applicable agreement, law, regulation, order or rule and without any further action on the part of the Bankruptcy Court or the related Reorganized Debtor.

9.3     **Binding Effect**

On and after the Confirmation Date, and subject to the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against the Debtors or Interests and their respective successors and assigns, regardless of whether (i) the Claim or Interest of such Holder is impaired

under the Plan, (ii) such Holder voted to accept or reject the Plan, or (iii) such Holder exercised the Release Opt-Out Election.

### 9.4    No Waiver of Discharge

Nothing in the Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of the Plan pursuant to section 1141 of the Bankruptcy Code.

### 9.5    Preservation of Causes of Action; Standing of Reorganized Debtors

Except as otherwise provided in the Plan or in any Plan Document, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and have the exclusive standing to commence litigation with respect to, prosecute, settle, compromise, withdraw or abandon all Causes of Action that the Debtors or their Estates may hold against any Person or Entity.  No Bankruptcy Court approval shall be required for any such action by the Reorganized Debtors after the Confirmation Date.

## ARTICLE X
## RELEASES, EXCULPATIONS AND INJUNCTIONS
## AGAINST INTERFERENCE WITH THE PLAN

### 10.1    Releases

In consideration of the contributions of the Released Parties to the Debtors' reorganization and Chapter 11 Cases, the Plan provides for the following releases:

(a)    **Releases by the Debtors and Reorganized Debtors.**  *Except as otherwise provided in the Plan, a Plan Document or the Confirmation Order, as of the Effective Date, for good and valuable consideration including but not limited to the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, each of the Debtors and Reorganized Debtors hereby irrevocably and absolutely release all Released Parties from any and all claims and Causes of Actions that the Debtors or Reorganized Debtors would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity or Person, based in whole or in part upon any act of omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtors, the Reorganized Debtors or the Chapter 11 Cases; provided, however, that there shall be no such release on account of Claims or liabilities in respect of any contractual obligation owed by such Entity or Person to the Debtors or the Reorganized Debtors; provided, further, that the foregoing provisions of this Section 10.1(a) shall have no effect on the liability of any of the Released Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a final and non-appealable order of the Bankruptcy Court.*

(b)    **Releases by Holders of Claims.**  *Except as otherwise provided in the Plan, a Plan Document or the Confirmation Order, on and after the Effective Date, in exchange for their distributions hereunder, each Holder of a Claim who has voted to accept the Plan and has not*

exercised the Release Opt-Out Election shall be deemed to have released irrevocably and absolutely each of the Released Parties from any and all Claims or Causes of Action based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date arising out of or in any way related to the Debtors or Reorganized Debtors or the Chapter 11 Cases; *provided*, *however*, that the foregoing provisions of this section 10.1(b) shall have no effect on the liability of the Released Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a final and non-appealable order of the Bankruptcy Court (the "Third-Party Releases").

## 10.2 Exculpations and Limitation of Liability

*None of the Exculpated Parties shall have or incur any liability to any Holder of a Claim or Interest for any action or omission arising out of or in connection the Debtors' restructuring or the Chapter 11 Cases, including without limitation the commencement of the Chapter 11 Cases, the negotiation, execution and performance of this Plan, the Disclosure Statement, or any Plan Document, the solicitation of votes for and the pursuit of Confirmation of this Plan, the Effective Date of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan; provided, however, that the foregoing provisions of this section 10.2 shall have no effect on the liability of the Exculpated Parties for gross negligence, willful misconduct, fraud or criminal conduct as determined by a final and non-appealable order of the Bankruptcy Court. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under and in connection with this Plan.*

## 10.3 Injunction Related to Releases and Exculpations

*Except as otherwise provided in the Plan, a Plan Document or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released or exculpated pursuant to this Plan, including without limitation the claims and causes of action released in Sections 10.1 and 10.2 hereof.*

## ARTICLE XI
## RETENTION OF JURISDICTION

## 11.1 General Scope of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order and the Chapter 11 Cases to the fullest extent permitted by law, including without limitation such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.

11.2　**Claims and Causes of Action**

The Bankruptcy Court shall retain jurisdiction (i) to classify, resolve objections to, determine the allowance or disallowance, or estimate pursuant to section 502(c) of the Bankruptcy Code all Claims against, and Interests in, the Debtors and Reorganized Debtors and (ii) to adjudicate and enforce all Causes of Action owned by the Debtors or Reorganized Debtors. After the Effective Date, the applicable Reorganized Debtor shall have the exclusive authority and standing to file, prosecute, withdraw, settle or compromise, without the approval of the Bankruptcy Court, all (i) objections to Claims, (ii) estimation proceedings with respect to Claims, and (ii) Causes of Action.

11.3　**Specific Jurisdiction**

Without in any way limiting the scope of the Bankruptcy Court's retention of jurisdiction over the Chapter 11 Cases as otherwise set forth in the Plan, the Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(a)　To hear and determine any applications or motions pending on the Effective Date for the rejection, assumption or assumption and assignment of any executory contract and to hear and determine, if need be, the allowance of Claims resulting therefrom;

(b)　To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)　To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)　To hear and determine objections to Claims, including ruling on any motion filed pursuant to Article VII of the Plan;

(e)　To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(f)　To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(g)　To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(h)　To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court,

including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or maintain the integrity of the Plan following consummation of the Plan;

(l)     To hear and determine other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all applicable periods);

(n)     To issue such orders in aid of execution of the Plan as may be authorized by section 1142 of the Bankruptcy Code;

(o)     To adjudicate all claims or controversies to a security or ownership interest in the Debtors' respective Assets or in any proceeds thereof;

(p)     To resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X of the Plan and to enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(q)     To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against Debtors arising under or in connection with the Plan;

(r)     To determine such other matters or proceedings as may be provided for under the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Plan or in any order or orders of the Bankruptcy Court, including but not limited to the Confirmation Order or any order which may arise in connection with the Plan or the Confirmation Order;

(s)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code;

(t)    To recover all Assets of the Debtors and property of the Debtors' Estates, wherever located; and

(u)    To enter a Final Decree closing the Chapter 11 Cases.

**11.4    Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, declines to exercise, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including the matters set forth in this Article XI, this Article XI shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**12.1    Governing Law**

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, notwithstanding any conflicts of law principles, rules or laws to the contrary.

**12.2    Payment of Statutory Fees**

On the Effective Date, and thereafter as may be required until the entry of a Final Decree, Reorganized Debtors shall pay all fees payable pursuant to section 1930 of Title 28 of the United States Code.

**12.3    Substantial Consummation**

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.4    Amendments**

The Plan may be amended, modified, or supplemented by the Debtors or Reorganized Debtors in the manner provided in section 1127 of the Bankruptcy Code or as otherwise permitted under applicable law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of Holders of Claims or Interests under the Plan, the Debtors or Reorganized Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

12.5    **Term of Injunctions or Stays**

Unless otherwise provided in accordance with the Plan or an applicable order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

12.6    **Section 1145 Exemption**

Pursuant to section 1145(a) of the Bankruptcy Code, neither section 5 of the Securities Act of 1933 nor any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, shall apply with respect to any security being offered, sold or transferred under the Plan, including without limitation all of the Interests in the Reorganized Debtors.

12.7    **Section 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, neither (i) the issuance, transfer or exchange of any security under the Plan, including the issuance of the Interests in the Reorganized Debtors nor (ii) the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (including real and personal property) shall be subject to any stamp, real estate transfer, mortgage recording sales, use or similar tax.

12.8    **Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors or any agent thereof making disbursements in accordance with the Plan is entitled but shall have no obligation to deduct any federal, state or local withholding taxes from any distribution made as reasonably appropriate.  All Holders of Allowed Claims shall be required to provide any information reasonably requested to effect the withholding of such taxes, and the Debtors, Reorganized Debtors or any disbursement agent thereof may withhold any distribution absent the provision of such information or further order of the Bankruptcy Court.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirement of any Governmental Unit within 60 days after the date of first notification by the Debtor, Reorganized Debtor or any disbursement agent to the Holder of the Claim of the need for such information, then such Holder's distribution shall be treated as an unclaimed distribution in accordance with section 7.4 of the Plan.

12.9    **Further Assurances**

The Debtors and the Reorganized Debtors are authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan.

12.10  **Severability of Plan Provisions**

If, prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms of the Plan will remain in full force and effect and in no way will be affected, impaired or invalidated by such holding, alternation or interpretation. The Confirmation Order shall constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.11  **Service of Documents**

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Debtor shall be sent by first class mail, postage prepaid or reliable overnight courier (e.g. Federal Express) to each of the following:

>Ciena Capital, LLC
>1515 Broadway, 11th Floor
>New York, NY 10036
>Attn: Louis Hafkin
>
>-with copies to-
>
>Hunton & Williams LLP
>200 Park Avenue
>New York, New York 10166
>Attn:   Peter S. Partee, Esq.
>         Scott H. Bernstein, Esq.
>
>         -and-
>
>Andrew Kamensky, Esq.
>HUNTON & WILLIAMS LLP
>1111 Brickell Ave., Ste. 2500
>Miami, Florida  33131
>
>         -and-
>
>Office of the United States Trustee for the
>Southern District of New York
>33 Whitehall Street
>New York, New York 10004

Attn:   Brian Masumoto, Esq.

### 12.12   Dissolution of Committee

On the Effective Date, the Committee shall dissolve.

### 12.13   Notice of Effective Date

No later than five calendar days after the Effective Date, the Reorganized Debtor shall File a notice of the occurrence of the Effective Date and mail such a notice via first class mail, postage prepaid, to all parties required to receive such notice under the Bankruptcy Rules or that have filed a notice of appearance and request for service in the Chapter 11 Cases.

### 12.14   Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

### 12.15   Filing of Additional Documents

On or before the Effective Date, the Debtors or Reorganized Debtor may file such agreements and documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

## ARTICLE XIII
## REQUEST FOR CONFIRMATION

The Debtors hereby respectfully request confirmation of the Plan under sections 1129(a) and 1129(b) of the Bankruptcy Code.

Dated: July 9, 2010
      New York, New York

CIENA CAPITAL LLC f/k/a BUSINESS LOAN EXPRESS, LLC, on behalf of itself and its affiliated debtors and debtors-in-possession

By:    */s/ Christina L. DelDonna*
Name:  Christina L. DelDonna
Title:   President and Chief Executive Officer

Counsel:

Peter S. Partee
Scott H. Bernstein
Jack A. Molenkamp
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
(212) 309-1000

-and-

Andrew Kamensky (*pro hac vice*)
HUNTON & WILLIAMS LLP
1111 Brickell Ave., Ste. 2500
Miami, Florida 33131
(305) 810-2500

74351.000002 EMF_US 31569152v1