**EXHIBIT 2**

**<u>FCA SETTLEMENT AGREEMENT</u>**

# FCA SETTLEMENT AGREEMENT

## I. PARTIES

This Settlement Agreement ("Agreement" or "FCA Settlement Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Small Business Administration ("SBA") (collectively "the United States"); Ciena Capital, LLC (formerly known as Business Loan Express, LLC ("BLX")) and its subsidiaries (collectively "Ciena"); Allied Capital Corporation ("Allied"); Robert Tannenhauser, Michael Cohen, Jennifer Goldstein, Louis Hafkin, Matthew McGee (the "Ciena Employed Individuals"); and Joan Sweeney (the "Allied Employed Individual"); (all together collectively referred to hereinafter as the "Parties"), through their authorized representatives.

## II. RECITALS

A.      Business Loan Center ("BLC"), a subsidiary of Ciena, is a private-non-depository lender and a Small Business Lending Company licensed to originate and service loans under Section 7(a) of the Small Business Act, 15 U.S.C. § 631 *et seq.* ("SBA 7(a) loans"), including, but not limited to, loans under the SBA Preferred Lender Program ("PLP"). Under the PLP, SBA authorized BLC to originate and service certain SBA guaranteed loans, with limited review by the SBA prior to making the loans. BLC is also a participant in other SBA 7(a) loan programs.

B.      Ciena and several of its subsidiaries filed petitions for bankruptcy under Chapter 11 of the Bankruptcy Code on September 30, 2008, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in a case captioned *In re Ciena Capital LLC, et al.*, Nos. 08-13783, *et seq.* (Bankr. S.D.N.Y.) ( the "Bankruptcy Action").

C.     Allied is a business development company that invests primarily in private middle-market companies in a variety of industries through long-term debt and equity capital instruments. Allied owns 94.9 percent of the voting interest of Ciena.

D.     The Ciena Employed Individuals are current or former officers, directors or senior executives of Ciena. The Allied Employed Individual is a current officer and director of Allied.

E.     On December 28, 2004, James R. Brickman ("Brickman") and Greenlight Capital Inc. ("Greenlight") (collectively "Relators"), filed a *qui tam* action in the United States District Court for the Northern District of Georgia (hereinafter the "District Court") captioned *United States ex rel. Brickman, et al. v. Business Loan Express, et al.*, No. 04 Civ. 3789, naming as defendants BLX, Allied, the Ciena Employed Individuals, the Allied Employed Individual, and "Does 1-100" (hereinafter the "Civil Action"). According to the Relators' complaint, Brickman is a citizen of the United States and resides in Dallas, Texas, and Greenlight is a corporation doing business in and is a resident of the State of New York. Relators' complaint alleges that BLX and the other named defendants engaged in loan origination fraud, committing the SBA to guarantee loans in the PLP which, under SBA rules, regulations and policies, and prudent lending practices, should not have been guaranteed, thereby violating the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"). Furthermore, the Relators allege that Ciena was the alter ego of Allied.

F.     The United States contends that it has certain civil claims, including claims under the FCA, against Ciena and the Ciena Employed Individuals for engaging in the following conduct during the period 1999 to 2008 (hereinafter referred to as the "Covered Conduct"):

(i.)    Deficient origination, underwriting, issuing, processing and servicing[1] of SBA PLP loans issued by Ciena that defaulted within 20 months after disbursement (the "PLP Early Default Loans"). These loans are listed in Attachment A. 1. to this Agreement, and are incorporated by reference herein; and

(ii.)    Deficient origination, underwriting, issuing, processing and servicing of loans that were the subject of a guilty plea entered into by former BLC Executive Vice President Patrick Harrington ("Harrington") or that were made by the BLX office that Harrington managed during the time he was employed by BLX (collectively the "Detroit Office Loans"). These loans are listed in Attachment A. 2. to this Agreement, and are incorporated by reference herein.

G.    The United States also contends that it has certain civil claims against Allied and the Allied Employed Individual arising solely from Allied's ownership interest in Ciena and Ciena's participation in the Covered Conduct.

H.    For purposes of this Agreement and the release set forth in Paragraph 10, the term "Covered Conduct" includes all allegations against Ciena, the Ciena Employed Individuals, Allied, and the Allied Employed Individual contained in the Civil Action.[2]

---

[1] As set forth herein, the United States is not releasing Ciena, Allied or the Named Individuals under this Agreement from any claim for any action occurring after the execution of this Agreement.

[2] The Ciena Employed Individuals and the Allied Employed Individual are hereinafter collectively referred to as the "Named Individuals".

I.  Ciena, Allied and the Named Individuals dispute all claims asserted by the Relators, and all claims asserted by the United States with respect to the Covered Conduct, and Ciena's participation in the Covered Conduct. Ciena, Allied and the Named Individuals deny that they have engaged in any wrongdoing with respect to the Covered Conduct. Allied and the Allied Employed Individual further deny that they have any liability for the Covered Conduct based upon Allied's ownership interest in Ciena.

J.  For purposes of this Agreement and the release set forth in Paragraph 10, the term "Released Loans" shall include all Loans defined as "Covered Conduct" in Recital F, as well as the categories of loans set forth below:

(i.)  Certain other SBA guaranteed loans listed in Attachment A. 3. to this Agreement. These loans are incorporated by reference herein; and

(ii.)  SBA guaranteed loans for which the SBA has been paid in full (the "Paid in Full Loans"). Paid in Full Loans include all loans originated by Ciena between January 1, 1999 and the date of execution of this Agreement (the "Execution Date") that were Paid in Full on or before the Execution Date. In order to be considered Paid in Full as of the Execution Date: (1) all principal, interest, fees and other costs due from the borrower on the loan must have been fully paid; (2) SBA must have no remaining guaranty obligation on the loan; and (3) no un-disbursed funds may remain available and subject to being drawn under the loan. Reinstatement of SBA's guarantee obligation on a loan subsequent to the Execution Date shall negate the loan's Paid in Full status.

K.     This Agreement represents a compromise to avoid continued litigation and associated risks, and is neither an admission of liability by Ciena, Allied or the Named Individuals, nor a concession by the United States that its claims are not well-founded. This Agreement may not be used as evidence of liability or responsibility in any other proceeding, except a proceeding to enforce the terms of this Agreement.

L.     Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of the Settlement of the Civil Action, including consideration paid under this Agreement related to the Covered Conduct. In addition, pursuant to 31 U.S.C. § 3730(d), Relators claim entitlement to certain expenses, fees and costs from Defendants. Contingent upon the Relators' agreement not to challenge the fairness, adequacy or reasonableness of the FCA Settlement in the District Court, in the Bankruptcy Court or in any other forum, and certain other conditions as set forth in the settlement agreement between the United States and Relators ("United States/Relators' Settlement Agreement"), the United States and Relators have agreed on the entitlement and amount of Relators' claim to a share of the proceeds of the Settlement of the Civil Action. In addition, subject to the terms and conditions set forth in the agreement between Defendants and Relators ("the Release Agreement"), Defendants and Relators have agreed on the entitlement and amount of Relators' claim to expenses, fees and costs.

M.     To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties have reached a full and final settlement of the Covered Conduct pursuant to the Terms and Conditions below.

### III. TERMS AND CONDITIONS

1.     In consideration for this Agreement, including the release described in Paragraph 10, below, and the full and final settlement of the Covered Conduct and the Released Loans, but

without prejudice to SBA's other claims (collectively, the "Other SBA Claims") that are being settled under the Settlement and Plan Support Agreement by and between Ciena and the SBA (the "SBA Settlement Agreement"), Ciena and Allied agree that the United States shall have an allowed general unsecured claim against Ciena in the Bankruptcy Action in an amount such that the United States receives an actual cash distribution in an amount equal to $8,200,000.00 (eight million two-hundred thousand dollars) ("$8.2 million") in partial settlement of the Covered Conduct, and an additional actual cash distribution equal to $1,900,000.00 (one million nine-hundred thousand) ("$1.9 million") which additional actual cash distribution is being made to the United States to remit to Relators to satisfy fully Relators' claim against Defendants for entitlement to costs, fees and expenses, pursuant to 31 U.S.C. § 3730(d). Together the $8.2 million cash distribution and the $1.9 million additional actual cash distribution total $10,100,000.00 (ten million one-hundred thousand dollars) ("$10.1 million") and will be hereinafter referred to as the "Cash Distribution" under the Joint Chapter 11 Plan of Reorganization to be filed by Ciena (the "Chapter 11 Plan"). The United States' agreement to provide the release described in Paragraph 10, below is also based upon certain payments, described in Paragraphs 1. a. and 1. b., below, that were the result of an administrative agreement entered into between SBA and Ciena on March 6, 2007 (the "March 6th Agreement"), although Ciena agreed to enter the March 6th Agreement before it had knowledge of the Civil Action and did not make these payments with the intent to promote settlement of the Covered Conduct:

> a. A payment in the amount of $8,162,057.30 ("$8.16 million") made to SBA by Ciena on March 6, 2007, for losses incurred as of the date of the March 6th Agreement on SBA guaranteed loans as a result of fraud by

Harrington; and

b.   Release to the SBA as part of the SBA Settlement Agreement of an escrow account established by Ciena in the amount of $10,000,000.00 ("$10 million") plus interest (the "Escrow Account") as a result of the March 6th Agreement. The Escrow Account was setup for the SBA to draw from if the agency suffered further losses on loans as a result of fraud by Harrington. Since the execution of the March 6th Agreement, SBA has in fact incurred more than $10 million in additional losses on the Detroit Office Loans, and, as a result, intends to exercise its rights to obtain all funds contained in the Escrow Account. Ciena's release of the Escrow Account to the SBA is a condition of this Agreement.

The United States is crediting the $8.16 million payment made by Ciena on March 6, 2007, and the Escrow Account to settlement of the Covered Conduct. These credits do not involve any additional payment to the United States by Ciena or Allied.

2.   Upon the execution of this Agreement (which shall occur when the last signatory has signed the Agreement), the United States shall file in the District Court a Notice of Election to Intervene in the Civil Action for Purposes of Settlement of its FCA Claims and For Purposes of Satisfying its General Unsecured Claim with respect to its FCA claims in Defendant Ciena's Bankruptcy Action ("Notice of Election to Intervene").

3.   Upon execution of this Agreement, Ciena and Allied shall take all necessary actions to seek Bankruptcy Court approval of this Agreement under Fed. R. Bankr. P. 9019, and performance of the obligations thereunder, including the actions described in this Paragraph and

in Paragraphs 4, 5 and 6, below, and including, without limitation, the allowance in favor of the United States of a general unsecured claim in an amount such that the United States receives the full Cash Distribution under the Chapter 11 Plan. Among other things, Ciena and Allied agree that:

    a.    After the filing in the District Court of the United States' Notice of Election to Intervene, but prior to the deadline for the United States to file a proof of claim in the Bankruptcy Action and prior to the Challenge Action deadlines (defined below) in the Bankruptcy Action, Ciena shall file a motion in the Bankruptcy Action seeking Bankruptcy Court approval of the FCA Settlement (hereinafter "Ciena's Motion to Approve the FCA Settlement"). Allied shall not object to Ciena's Motion to Approve the FCA Settlement.

    b.    Ciena's Motion to Approve the FCA Settlement shall request entry of an order by the Bankruptcy Court providing for, *inter alia*, (i) the allowance, pursuant to Fed. R. Bankr. P. 9019, of a general unsecured claim in favor of the United States in an amount such that the United States receives the full Cash Distribution on the Effective Date of the Plan, which shall be on the eleventh (11) day after the Bankruptcy Court enters an order confirming the Chapter 11 Plan, regardless of whether an appeal of the confirmation of the Chapter 11 Plan has been filed, unless a stay pending appeal has been issued; and (ii) postponement of Bankruptcy Action deadlines, including the Challenge Action deadlines,[3] and deadlines for the United States to file proofs of claim in the

---

[3] Within the Bankruptcy Action, parties-in-interest had, with limited exception, until February 1, 2009 (the "Challenge Action Deadline"), to file a Challenge Action to the Cash Collateral Order (Docket No. 228) (i) challenging the amount, validity, enforceability priority or extent of the Prepetition Indebtedness or the Prepetition Secured Parties' security interests in, and liens upon,

Bankruptcy Action, as set forth in Paragraph 3. c., below. If a stay pending appeal of the

Chapter 11 Confirmation Plan has been issued, the Effective Date of the Plan shall be the

date, if any, that an order confirming the Plan becomes a Final Order.

     c.    The following Bankruptcy Action deadlines shall be postponed until the

Effective Date of the Plan, or by other order of the Bankruptcy Court, in such a manner

that each such deadline, as identified in the May 15, 2009 Stipulation and Order of the

Bankruptcy Court, is separated from the next such deadline by at least the same number

of days as provided in the May 15, 2009 Stipulation and Order:[4]

    (1)    The deadline for the United States to file or amend any proofs of claim relating to its FCA claims;

    (2)    All deadlines in the Challenge Action, including deadlines for briefing any motions therein; and

    (3)    The Additional Challenge Action Deadline, as well as any deadline for pre-complaint discovery for such an action.

     d.    For purposes of this Agreement, "Final Order" shall mean an order that (i)

has not been reversed, vacated, modified, amended or reconsidered, and (ii) as to which

(1) the time to file an appeal or motion to vacate, modify, amend or reconsider has

expired and no appeal or motion to vacate, modify, amend or reconsider has been timely

filed, (2) any appeal that has been filed has been resolved by the highest court to which

the order appealed may be taken, or (3) an appeal or motion to vacate, modify, amend or

---

the Prepetition Collateral, or (ii) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates. The Challenge Action Deadline has been extended by the parties-in-interest to the Bankruptcy Action and approved by the Bankruptcy Court until, at least, July 1, 2010 or the effective date of the Chapter 11 Plan.

[4] If any appeal of the Bankruptcy Court's approval of the Plan of Reorganization is taken and the Bankruptcy Court issues a stay pending appeal, these deadlines shall be extended for six (6) months from the date of completion of any and all appeals.

reconsider has been timely filed, but has not yet been resolved and no stay pending appeal on such motion to vacate, modify, amend or reconsider has issued.

      e.    Ciena and Allied agree not to seek equitable subordination of or otherwise oppose the allowance or payment to the United States of the full Cash Distribution.

      f.    The content of Ciena's Motion to Approve the FCA Settlement is subject to prior approval by the Department of Justice, and may include provisions to allow disclosure of the motion and of a summary of the proposed Settlement Agreement, as necessary to allow for consideration of the Motion by required parties in the Bankruptcy Action, such as members of the Creditors' Committee and the U.S. Trustee, and/or her designees.

      g.    If any of the actions as described in this Paragraph 3, any of its sub-parts, and any other paragraphs referenced in this Paragraph 3 are not fulfilled and completed as described in this Agreement, then this Agreement shall be void *ab initio* and the Parties shall be returned to the *status quo ante*.

4.    Upon execution of this Agreement, subject to the definitions set forth in Paragraph 4. a., below, Allied further agrees to:

      (i)    Cast all votes with respect to the Allied Claims to accept, and otherwise support the prompt confirmation of, the Plan in accordance with the Bankruptcy Code, the Bankruptcy Rules, the solicitation materials distributed in connection with the Plan, and this Agreement;

      (ii)    Refrain from (1) proposing its own plan of reorganization or supporting, consenting to or participating in the formulation of any plan of reorganization other than the Plan, (2) directly or indirectly seeking or supporting the dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, or (3) directly or indirectly seeking or supporting the appointment of a Chapter 11 trustee or an examiner of any type;

(iii) Not sell, transfer or otherwise convey any of the Allied Claims or any proofs of claim filed by or on behalf of Allied in the Bankruptcy Cases to any third party;

(iv) Support the approval of this Agreement by the Bankruptcy Court and, in connection with such approval, permit accurate disclosure by Ciena of the contents of this Agreement as may be necessary or advisable in the discretion of Ciena after consultation with its professionals;

(v) Refrain from (1) directly or indirectly objecting to or otherwise opposing approval of the Disclosure Statement, so long as the Disclosure Statement is not inconsistent with this Agreement or the Plan or contrary to the Bankruptcy Code or otherwise contrary to law; *provided that* Ciena will submit any proposed Disclosure Statement to Allied for review at least five business days before filing the Disclosure Statement with the Bankruptcy Court, (2) directly or indirectly objecting to or otherwise opposing confirmation of the Plan, (3) directly or indirectly joining or supporting any other party in objecting to or otherwise opposing the Plan, (4) directly or indirectly joining or supporting any other party in directly or indirectly objecting to the confirmation of or otherwise opposing the Plan, (5) seeking any modification of the Plan without obtaining the express prior written consent and support of Ciena, or (6) directly or indirectly taking any action inconsistent with the terms set forth herein; and

(vi) On the Effective Date of the Plan, shall absolutely, irrevocably and indefeasibly (i) release a sufficient amount of the liens and security interests collateralizing the Secured Credit Facility to fund all distributions required to be funded under the Plan (the "Plan Funding Amount"), including without limitation the $10.1 million required to be paid to the United States under this Settlement Agreement, and (ii) authorize Ciena to use the Plan Funding Amount to make all distributions called for under the Plan.

a. Definitions.

(i) "Allied Claims" shall mean all Claims against Ciena of any type whatsoever, secured or unsecured, priority, administrative or otherwise, owned or controlled by Allied or any of its affiliates as of the date hereof, including without limitation all of Allied's secured Claims arising in connection with the Secured Credit Facility.

(ii) "Allied Default" shall mean any failure by Allied to comply with its covenants in this Paragraph 4 that have not been cured within five (5) business days following Allied's receipt of written notice thereof.

(iii) "Secured Credit Facility" shall mean (i) that certain Second Amended and Restated Credit Agreement, dated as of March 17, 2006, by and among Ciena Capital, LLC, as borrower, Citibank, N.A., as administrative agent for the lenders, each of the Subsidiary Guarantors (as defined therein), Allied, the LC Issuers (as defined therein), the Swing Line Lender (as defined therein), and the Lenders (as defined therein), as it may have been amended, restated, supplemented or otherwise modified from time to time and (ii) all security agreements, account control agreements, guarantees, subordination agreements, intercreditor agreements, and other documents executed and delivered in connection therewith, as any or all of such agreements and documents may have been amended, restated, supplemented or otherwise modified from time to time.

b.   <u>Remedies Upon Default</u>.  Upon the occurrence of an Allied Default, Ciena may enforce this Agreement against Allied through the exercise of all appropriate legal and equitable rights and remedies.  If Ciena unreasonably fails or refuses to exercise a particular legal or equitable right or remedy within five business days following receipt of written demand by the United States to do so, the United States thereupon may exercise such legal or equitable right or remedy, but only to the extent of the United States' interest in and entitlement to distributions under the Plan.  For the avoidance of doubt, the obligations of Allied in this Paragraph 4, are recourse, *in personam* obligations of Allied.

5.   Ciena shall file the Chapter 11 Plan, Disclosure Statement, and such other documents as it deems necessary or appropriate (collectively the "Plan Documents"), which Plan Documents, among other things, shall implement the terms of this Agreement, including payment of the full Cash Distribution to the United States.  Ciena shall provide the United States with a copy of the Plan Documents when they are filed, and agrees to allow the United States not less than ten (10) business days to review the Plan Documents before they are approved, and the opportunity to submit amendments to the Plan Documents relating to this Settlement and to payment of the full Cash Distribution to the United States.  Ciena shall file such Plan Documents

within thirty (30) days of an order approving Ciena's Motion to Approve the Settlement, and Ciena shall request that a hearing be held on the confirmation of the Chapter 11 Plan no later than 120 days from the filing of the Plan Documents. Furthermore, Ciena shall obtain entry of an order confirming the Chapter 11 Plan within 180 days from filing of the Plan Documents unless otherwise agreed in writing by the United States. In the event that Ciena does not satisfy any of the foregoing deadlines (unless otherwise agreed to by the United States or due to circumstances outside Ciena's control), Ciena shall pay the United States interest on the full Cash Distribution at the Prime Rate of Interest as published in the Wall Street Journal on the effective date of this Agreement, but only for such period of time that there has been a delay caused by the actions of Ciena. Such interest shall constitute a post-petition administrative expense of the Debtor's bankruptcy estate, pursuant to 11 U.S.C. § 503.

Notwithstanding the foregoing, nothing shall prejudice the United States' right to review and object to other portions of the Plan Documents relating to other claims the United States has or may have in the Bankruptcy Action. If the Bankruptcy Court issues an order denying confirmation of the Chapter 11 Plan and that order becomes a Final Order under applicable law, this Agreement shall be void *ab initio* and the Parties returned to the *status quo ante*.

6. The full Cash Distribution shall be paid on the Effective Date of the Chapter 11 Plan via electronic funds transfer pursuant to written instructions to be provided by the Department of Justice. If the United States is required at any time to payback, release, return any or all of the Cash Distribution or the Escrow Account, then this Settlement shall be void *ab initio* and the Parties shall be returned to the *status quo ante*. Contingent upon the United States' receipt of the full Cash Distribution and Ciena's release of the Escrow Account to the SBA, and

upon the United States not having to return all or any portion of those funds, as soon as feasible after receipt, the United States agrees to:

a. Pay Relators' share of the proceeds of the settlement of the Civil Action in the amount and subject to the provisions set forth in the United States/Relators' Settlement Agreement; and

b. To transfer to Relators the $1.9 million that Defendants have agreed to pay Relators to satisfy fully Relators' claim against the Defendants for expenses, fees and costs, pursuant to 31 U.S.C. § 3730(d), which funds have been included by Defendants in the full Cash Distribution, subject to the provisions in the Release Agreement between Relators and Defendants.

7. Within ten (10) business days following receipt by the United States of the full Cash Distribution and a release of the Escrow Account, payment being issued to Relators for Relators' share, and payment being issued to Relators for Relators' costs and fees, as set forth herein, the United States and Relators shall file a conditional notice of voluntary dismissal of the Civil Action with prejudice as to Ciena, Allied and the Named Individuals ("Conditional Notice of Dismissal"). The dismissal shall be expressly conditioned upon the United States not having to pay back, release or return, at any time, any or all of the Cash Distribution or the Escrow Account. In the event that the United States is required, for any reason, to pay back, release or return any of the Cash Distribution or the Escrow Account at any time in the future, then the dismissal shall be deemed null and void *ab initio* and the Parties returned to the *status quo ante*.

8. Ciena and Allied agree that the following are preconditions to any Release becoming effective under Paragraph 10 (the "Release Preconditions"):

a. Entry of an order by the Bankruptcy Court approving Ciena's Motion to Approve the Settlement, and such order becoming a Final Order;

b. Entry of an order by the Bankruptcy Court confirming the Chapter 11 Plan, the terms of which provide for and result in payment to the United States of the full Cash Distribution and the release of the Escrow Account within the timeframes specified by this Agreement;

c. Receipt by the United States of the full Cash Distribution and the release of the Escrow Account on the Effective Date of the Chapter 11 Plan, as described in Paragraph 6; and

d. Entry of an order by the District Court approving the United States' Conditional Motion to Dismiss the Civil Action against Ciena, Allied and the Named Individuals, and such order becoming a Final Order.

9. In the event that any of the Release Preconditions are not satisfied for any reason, including failure of the Bankruptcy Court or District Court to grant the requested relief, a successful appeal to an order implementing the terms of the FCA Settlement, or an order requiring the United States to return all or any part of the Cash Distribution, the Parties agree that this Settlement, including the releases described in Paragraphs 10 and 14 and the credits described in Paragraph 1, will be rendered void *ab initio*; the United States' claims related to the Covered Conduct and Released Loans are not extinguished; neither Ciena nor Allied will object to extensions of the Challenge Action deadlines and the deadlines for the United States to file proofs of claim in Ciena's Bankruptcy Action, as set forth in Paragraph 3 b.(4.)(i.)-(iii.), above; and the Parties will be returned to the *status quo ante*. In the event that the Parties are returned

to the *status quo ante*, the United States shall return any portion of the $10.1 million Cash Distribution obtained by the United States through confirmation of the Chapter 11 Plan.

10.    Subject to the claims identified in Paragraph 11, below as the "Excluded Claims" and upon the occurrence of the Release Preconditions, in consideration of the obligations of Ciena, Allied and the Named Individuals in this Agreement, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release Ciena, Allied and the Named Individuals from any civil or administrative monetary claim the United States has asserted, could have asserted, or may assert in the future for the Covered Conduct and the Released Loans under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, § 0.45(d), or the common law theories of unjust enrichment, fraud and disgorgement, including, but not limited to any claim that Allied is or could be liable by reason of piercing the corporate veil or alter ego for the Covered Conduct.  The only exception to the claims or potential claims described in the immediately preceding sentence and released by this Agreement are the Excluded Claims addressed in Paragraph 11, below.  The release in this Agreement, when read in conjuction with the release granted by the SBA in the SBA Settlement Agreement, is intended to include any theory of civil or administrative liability that the United States has asserted, could have asserted, or may otherwise (but for this Agreement) assert with respect to the Covered Conduct and the Released Loans, other than the Excluded Claims identified in Paragraph 11.

11.    Notwithstanding any term of this Agreement, the United States specifically reserves and excludes from the scope and terms of this Agreement as to any entity or

person (including Ciena, Allied and the Named Individuals) the following potential claims ("the Excluded Claims"):

a.  Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.  Any criminal liability;

c.  Except as explicitly stated in this Agreement, any administrative liability including the suspension and debarment rights of any federal agency;

d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.  Any claims or liability based upon a breach of the terms of this Agreement;

f.  Any liability for personal injury or property damage arising from the Covered Conduct;

g.  Any civil or administrative liability of individuals (including current or former directors, officers, employees, agents, or shareholders of Ciena or Allied) who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), are indicted, charged, or convicted, or who enter into a plea agreement related to the Covered Conduct; and

h.  Any claim for any action that occurs subsequent to the execution of this Agreement.

i.  The Other SBA Claims in the Bankruptcy Action as are addressed, released or preserved by the SBA Settlement Agreement, including without limitation repair and denial claims that arise as a result of BLC's servicing and liquidation actions

–17–

on SBA 7(a) loans after March 18, 2009.

12.    Ciena, Allied and the Named Individuals waive and shall not assert any defenses they may have to any criminal prosecution or administrative action relating to the Covered Conduct (as described in Section II., Recitals E-H, above), that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

13.    Nothing in this Agreement constitutes an agreement by the United States concerning the characterization of the Cash Distribution for purposes of the Internal Revenue laws, Title 26 of the United States Code.

14.    In consideration of this Agreement, Ciena, Allied and the Named Individuals fully and finally release the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that they have asserted, could have asserted, or may assert in the future against the United States, and its agencies, employees, servants, and agents, related to the Covered Conduct and Released Loans and the United States' investigation and prosecution thereof. Further, this release does not cover any claims or liability based upon the breach of the terms of this Agreement. Nor does it cover any liability based on claims asserted by the United States with respect to conduct that occurred after the execution of this Agreement.

15.    Contemporaneously with the signing of this Agreement, Ciena, Allied and the Named Individuals agree to sign the Waiver of Statute of Limitations Agreement (Attachment B hereto), which shall exclude the period of time for determining whether any civil or administrative claims are time-barred by statute of limitations, laches, or any other time-related

defenses (hereinafter the "Statute of Limitations Period"), as set forth in Attachment B.

16.     Ciena, Allied and the Named Individuals further agree to the following:

    a.     <u>Unallowable Costs Defined:</u> that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Ciena and Allied and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)     the matters covered by this Agreement and any related criminal plea;

    (2)     the United States' audit(s), civil investigation(s), and criminal investigations of the matters covered by this Agreement;

    (3)     Ciena and Allied's investigation, defense, and corrective actions undertaken in response to the United States' audit(s), civil, and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4)     the negotiation and performance of this Agreement and any Plea Agreement;

    (5)     the payment Ciena and/or Allied make to the United States pursuant to this Agreement and any payments that they may make to the Relators, including costs and attorneys fees, are "Unallowable Costs" for government contracting purposes (hereinafter referred to as "Unallowable Costs").

Notwithstanding anything stated in this subsection 16(a), the costs incurred by Ciena in the normal processing, servicing and liquidation of SBA loans shall not

be deemed "Unallowable Costs."

b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs will be separately determined and accounted for by Ciena and Allied, and Ciena and Allied shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Ciena, Allied and the Named Individuals further agree that within 90 days of the Effective Date of this Agreement they shall identify any unallowable costs (as defined in this Paragraph) included in payments previously sought by Ciena, Allied any of their subsidiaries or affiliates, or the Named Individuals, from the United States. Ciena, Allied and the Named Individuals agree that the United States, at a minimum, shall be entitled to recoup from them any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs in any such payments. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Ciena, Allied, any of their subsidiaries or affiliates, or the Named Individuals regarding any Unallowable Costs included in payments previously sought by Ciena, Allied, or the Named Individuals, or the effect of any such Unallowable Costs on the amount of such payments.

d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Ciena and Allied's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

17.     Ciena, Allied and the Named Individuals agree that they will each continue to reasonably and truthfully cooperate with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Ciena and Allied shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals.

18.     The Agreement is intended to be for the benefit of the Parties only, and may not be enforced by any person or entity not a Party to this Agreement. The Parties do not release any claims against any other person or entity.

19.     The Parties warrant that, in evaluating whether to execute this Agreement, they: (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Ciena, Allied and the Named Individuals, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Ciena, Allied and the Named Individuals were or became indebted to before on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

20.     Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with the Civil Action and the Bankruptcy Action, including the preparation and performance of this Agreement.

21.     The Parties represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

22.     This Agreement is governed by the laws of the United States.  The Parties agree that the Bankruptcy Court and the District Court shall have concurrent jurisdiction, and that the venue for any disputes arising between and among the Parties under this Agreement relating to the interpretation of the Agreement, the fairness and adequacy of the Settlement or the Relators' share, shall be exclusively with the District Court.

23.     For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and in any subsequent dispute shall not, therefore, be construed against any Party as the drafter.

24.     This Agreement constitutes the complete agreement between the Parties relating to the causes of action identified in Recitals E-J of this Agreement concerning the Covered Conduct and the Released Loans.  This Agreement may not be amended except by written consent of the Parties.

25.     The persons signing this Agreement on behalf of Ciena, Allied and the Named Individuals represent and warrant that they are authorized to execute this Agreement.  The United States' signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

26.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27.     This Agreement is binding on the Parties and their successors, transferees, heirs, and assigns.

28.     All Parties consent to the disclosure of this Agreement, and information about this

Agreement, to the public following the dismissal and unsealing of the Civil Action in the District Court, and following entry of an Order by the Bankruptcy Court confirming the Chapter 11 Plan, the terms of which provide for and result in payment to the United States of the full Cash Distribution within the timeframes specified by this Agreement.

THE UNITED STATES OF AMERICA

Civil Division Commercial Litigation Branch
United States Department of Justice

SALLY QUILLIAN YATES
United States Attorney for the
Northern District of Georgia

By: Rebecca A. Ford
Trial Attorney
601 D Street, N.W.
Washington, DC 20530
Tel. (202) 514-1511

By: Gerald S. Sachs
Special Assistant United States Attorney
75 Spring Street, S.W., Suite 600
Atlanta, GA 30303
Tel. (404) 581-6057

Date: _____

Date: _____

PREET BHARARA
United States Attorney for the
Southern District of New York

PEGGY E. GUSTAFSON
Inspector General
U.S. Small Business Administration

By: Jean-David Barnea
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY 10007
Tel. (212) 637-2679

By: Glenn P. Harris
Counsel to the Inspector General
409 Third Street, S.W.
Washington, DC 20416
Tel. (202) 205-7200

Date: _____

Date: _____

28. All Parties consent to the disclosure of this Agreement, and information about this Agreement, to the public following the dismissal and unsealing of the Civil Action in the District Court, and following entry of an Order by the Bankruptcy Court confirming the Chapter 11 Plan, the terms of which provide for and result in payment to the United States of the full Cash Distribution within the timeframes specified by this Agreement.

THE UNITED STATES OF AMERICA

Civil Division Commercial Litigation Branch
United States Department of Justice

By: Rebecca A. Ford
Trial Attorney
601 D Street, N.W.
Washington, DC 20530
Tel. (202) 514-1511

Date: 4/5/10

SALLY QUILLIAN YATES
United States Attorney for the
Northern District of Georgia

By: Gerald S. Sachs
Special Assistant United States Attorney
75 Spring Street, S.W., Suite 600
Atlanta, GA 30303
Tel. (404) 581-6057

Date: _____

PREET BHARARA
United States Attorney for the
Southern District of New York

By: Jean-David Barnea
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY 10007
Tel. (212) 637-2679

Date: _____

PEGGY E. GUSTAFSON
Inspector General
U.S. Small Business Administration

By: Glenn P. Harris
Counsel to the Inspector General
409 Third Street, S.W.
Washington, DC 20416
Tel. (202) 205-7200

Date: _____

−23−

28.    All Parties consent to the disclosure of this Agreement, and information about this

Agreement, to the public following the dismissal and unsealing of the Civil Action in the District

Court, and following entry of an Order by the Bankruptcy Court confirming the Chapter 11 Plan,

the terms of which provide for and result in payment to the United States of the full Cash

Distribution within the timeframes specified by this Agreement.

THE UNITED STATES OF AMERICA

Civil Division Commercial Litigation Branch
United States Department of Justice

SALLY QUILLIAN YATES
United States Attorney for the
Northern District of Georgia

By: Rebecca A. Ford
Trial Attorney
601 D Street, N.W.
Washington, DC 20530
Tel. (202) 514-1511

By: Gerald S. Sachs
Special Assistant United States Attorney
75 Spring Street, S.W., Suite 600
Atlanta, GA 30303
Tel. (404) 581-6057

Date: _____

Date: 4/5/2010

PREET BHARARA
United States Attorney for the
Southern District of New York

PEGGY E. GUSTAFSON
Inspector General
U.S. Small Business Administration

By: Jean-David Barnea
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY 10007
Tel. (212) 637-2679

By: Glenn P. Harris
Counsel to the Inspector General
409 Third Street, S.W.
Washington, DC 20416
Tel. (202) 205-7200

Date: _____

Date: _____

28.    All Parties consent to the disclosure of this Agreement, and information about this

Agreement, to the public following the dismissal and unsealing of the Civil Action in the District

Court, and following entry of an Order by the Bankruptcy Court confirming the Chapter 11 Plan,

the terms of which provide for and result in payment to the United States of the full Cash

Distribution within the timeframes specified by this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

Civil Division Commercial Litigation Branch
United States Department of Justice

SALLY QUILLIAN YATES
United States Attorney for the
Northern District of Georgia


By: Rebecca A. Ford
Trial Attorney
601 D Street, N.W.
Washington, DC  20530
Tel. (202) 514-1511

By:  Gerald S. Sachs
Special Assistant United States Attorney
75 Spring Street, S.W., Suite 600
Atlanta, GA  30303
Tel. (404) 581-6057


Date: _____

Date: _____


PREET BHARARA
United States Attorney for the
Southern District of New York

PEGGY E. GUSTAFSON
Inspector General
U.S. Small Business Administration


By: Jean-David Barnea
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY  10007
Tel. (212) 637-2679

By: Glenn P. Harris
Counsel to the Inspector General
409 Third Street, S.W.
Washington, DC  20416
Tel. (202) 205-7200


Date: April 5, 2010

Date: _____

28.    All Parties consent to the disclosure of this Agreement, and information about this

Agreement, to the public following the dismissal and unsealing of the Civil Action in the District

Court, and following entry of an Order by the Bankruptcy Court confirming the Chapter 11 Plan,

the terms of which provide for and result in payment to the United States of the full Cash

Distribution within the timeframes specified by this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

Civil Division Commercial Litigation Branch
United States Department of Justice

SALLY QUILLIAN YATES
United States Attorney for the
Northern District of Georgia


By:  Rebecca A. Ford
Trial Attorney
601 D Street, N.W.
Washington, DC  20530
Tel. (202) 514-1511

By:  Gerald S. Sachs
Special Assistant United States Attorney
75 Spring Street, S.W., Suite 600
Atlanta, GA  30303
Tel. (404) 581-6057


Date: _____

Date: _____


PREET BHARARA
United States Attorney for the
Southern District of New York

PEGGY E. GUSTAFSON
Inspector General
U.S. Small Business Administration


By:  Jean-David Barnea
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY  10007
Tel. (212) 637-2679

By:  Glenn P. Harris
Counsel to the Inspector General
409 Third Street, S.W.
Washington, DC  20416
Tel. (202) 205-7200


Date: _____

Date: 4/6/10

## ALLIED CAPITAL CORPORATION

MILLER MARTIN PLLC
Counsel for Allied Capital Corporation

DICKSTEIN SHAPIRO LLC
Counsel for Allied Capital Corporation

By: Daniel P. Griffin
1170 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309
Tel. (404) 962-6154

By: Daniel M. Litt
1825 Eye Street, N.W.
Washington, DC 20006
Tel. (202) 420-4747

Date: March 30, 2010

Date: _____

Allied Capital Corporation

By: Ralph G. Blasey, III
Its: Executive Vice President, Corporate Counsel
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

Date: _____

ALLIED CAPITAL CORPORATION

MILLER MARTIN PLLC
Counsel for Allied Capital Corporation

DICKSTEIN SHAPIRO LLC
Counsel for Allied Capital Corporation

By:  Daniel P. Griffin
1170 Peachtree Street, N.E., Suite 800
Atlanta, GA  30309
Tel. (404) 962-6154

By:  Daniel M. Litt
1825 Eye Street, N.W.
Washington, DC  20006
Tel. (202) 420-4747

Date: _____

Date:  _3-31-10_____

Allied Capital Corporation

By:  Ralph G. Blasey, III
Its: Executive Vice President, Corporate Counsel
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

Date: _____

<u>ALLIED CAPITAL CORPORATION</u>

MILLER MARTIN PLLC          DICKSTEIN SHAPIRO LLC
Counsel for Allied Capital Corporation    Counsel for Allied Capital Corporation

_____    _____
By:  Daniel P. Griffin               By:  Daniel M. Litt
1170 Peachtree Street, N.E., Suite 800   1825 Eye Street, N.W.
Atlanta, GA  30309             Washington, DC  20006
Tel. (404) 962-6154           Tel. (202) 420-4747

Date: _____    Date: _____

Allied Capital Corporation

By:  Ralph G. Blasey, III
Its: Executive Vice President, Corporate Counsel
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006

Date: ____3 - 30 -10____

–24–

## CIENA CAPITAL, LLC

WILMER HALE LLP
Counsel for Ciena Capital LLC

HUNTON & WILLIAMS LLP
Counsel for Ciena Capital LLC

By: Thomas F. Connell
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel. (202) 663-6881

By: Peter S. Partee
200 Park Avenue, 53rd Floor
New York, NY 10166
Tel. (212) 309-1056

Date: 3/30/10

Date: _____

Ciena Capital, LLC

By: Scott Binder
Its: Chief Executive Officer

Date: _____

<u>CIENA CAPITAL, LLC</u>

WILMER HALE LLP
Counsel for Ciena Capital LLC

HUNTON & WILLIAMS LLP
Counsel for Ciena Capital LLC

By: Thomas F. Connell
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
Tel. (202) 663-6881

By:  Peter S. Partee
200 Park Avenue, 53rd Floor
New York, NY 10166
Tel. (212) 309-1056

Date: _____

Date: 3/30/10

Ciena Capital, LLC


By:  Scott Binder
Its: Chief Executive Officer

Date: _____

## CIENA CAPITAL, LLC

WILMER HALE LLP
Counsel for Ciena Capital LLC

HUNTON & WILLIAMS LLP
Counsel for Ciena Capital LLC


By: Thomas F. Connell
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Tel. (202) 663-6881

By: Peter S. Partee
200 Park Avenue, 53rd Floor
New York, NY 10166
Tel. (212) 309-1056


Date: _____

Date: _____


Ciena Capital, LLC

By: Scott Binder
Its: Chief Executive Officer


Date: _Mnuch 30, 20,0_

NAMED INDIVIDUALS

Robert Tannenhauser

By: Robert Tannenhauser
c/o The Ruxton Capital Group
50 West 72nd Street, Suite C-6
New York, NY 10023

Date: _____

Michael Cohen

By: Michael Cohen
5 Pewter Lane
New Providence, NJ 07974

Date: _____

Jennifer Goldstein

By: Jennifer Goldstein
29354 Castlehill Drive
Agoura Hills, CA 91301

Date: _____

Louis Hafkin

By: Louis Hafkin
45 Joyce Lane
Woodbury, NY 11797

Date: _____

Matthew McGee

By: Matthew McGee
101 Thomashire Court
Richmond, VA 23229

Date: _____

Joan Sweeney

By: Joan Sweeney
10801 Tradewind Drive
Oakton, VA 22124

Date: _____

–26–

## NAMED INDIVIDUALS

Robert Tannenhauser

_____
By: Robert Tannenhauser
c/o The Ruxton Capital Group
50 West 72nd Street, Suite C-6
New York, NY 10023

Date: _____


Michael Cohen

_____
By: Michael Cohen
5 Pewter Lane
New Providence, NJ 07974

Date: _____


Jennifer Goldstein

_____
By: Jennifer Goldstein
29354 Castlehill Drive
Agoura Hills, CA 91301

Date: _3/30/10_____


Louis Hafkin

_____
By: Louis Hafkin
45 Joyce Lane
Woodbury, NY 11797

Date: _____


Matthew McGee

_____
By: Matthew McGee
101 Thomashire Court
Richmond, VA 23229

Date: _____


Joan Sweeney

_____
By: Joan Sweeney
10801 Tradewind Drive
Oakton, VA 22124

Date: _____

## NAMED INDIVIDUALS

Robert Tannenhauser

By: Robert Tannenhauser
c/o The Ruxton Capital Group
50 West 72nd Street, Suite C-6
New York, NY 10023

Date: _____

Michael Cohen

By: Michael Cohen
5 Pewter Lane
New Providence, NJ 07974

Date: _____

Jennifer Goldstein

By: Jennifer Goldstein
29354 Castlehill Drive
Agoura Hills, CA 91301

Date: _____

Louis Hafkin

By: Louis Hafkin
45 Joyce Lane
Woodbury, NY 11797

Date: _____

Matthew McGee

By: Matthew McGee
101 Thomashire Court
Richmond, VA 23229

Date: 3-30-10

Joan Sweeney

By: Joan Sweeney
10801 Tradewind Drive
Oakton, VA 22124

Date: _____

–26–

## NAMED INDIVIDUALS

Robert Tannenhauser

_____
By: Robert Tannenhauser
c/o The Ruxton Capital Group
50 West 72nd Street, Suite C-6
New York, NY 10023

Date: _____

Jennifer Goldstein

_____
By: Jennifer Goldstein
29354 Castlehill Drive
Agoura Hills, CA 91301

Date: _____

Matthew McGee

_____
By: Matthew McGee
101 Thomashire Court
Richmond, VA 23229

Date: _____

Michael Cohen

_____
By: Michael Cohen
5 Pewter Lane
New Providence, NJ 07974

Date: _____3/31/10_____

Louis Hafkin

_____
By: Louis Hafkin
45 Joyce Lane
Woodbury, NY 11797

Date: _____

Joan Sweeney

_____
By: Joan Sweeney
10801 Tradewind Drive
Oakton, VA 22124

Date: _____

–26–

## NAMED INDIVIDUALS

Robert Tannenhauser

_____
By: Robert Tannenhauser
c/o The Ruxton Capital Group
50 West 72nd Street, Suite C-6
New York, NY 10023

Date: _____


Michael Cohen

_____
By: Michael Cohen
5 Pewter Lane
New Providence, NJ 07974

Date: _____


Jennifer Goldstein

_____
By: Jennifer Goldstein
29354 Castlehill Drive
Agoura Hills, CA 91301

Date: _____


Louis Hafkin

_____
By: Louis Hafkin
45 Joyce Lane
Woodbury, NY 11797

Date: 8/31/10


Matthew McGee

_____
By: Matthew McGee
101 Thomashire Court
Richmond, VA 23229

Date: _____


Joan Sweeney

_____
By: Joan Sweeney
10801 Tradewind Drive
Oakton, VA 22124

Date: _____

–26–

NAMED INDIVIDUALS

Robert Tannenhauser                      Michael Cohen


_____              _____
By: Robert Tannenhauser                  By: Michael Cohen
c/o The Ruxton Capital Group             5 Pewter Lane
50 West 72nd Street, Suite C-6           New Providence, NJ 07974
New York, NY 10023

Date: _____                Date: _____


Jennifer Goldstein                       Louis Hafkin


_____              _____
By: Jennifer Goldstein                   By: Louis Hafkin
29354 Castlehill Drive                   45 Joyce Lane
Agoura Hills, CA 91301                   Woodbury, NY 11797

Date: _____                Date: _____


Matthew McGee                            Joan Sweeney

                                         *Joan Sweeney*
_____              _____
By: Matthew McGee                        By: Joan Sweeney     c/o Allied Capital
101 Thomashire Court                     ~~10801 Tradewind Drive~~   1919 Pennsylvania ave.
Richmond, VA 23229                       ~~Oakton, VA 22124~~   Washington, D.C. 20006

Date: _____                Date: 3/31/10


–26–