| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>                                                      :<br>In re:                                          :<br>                                          :<br>CIENA CAPITAL LLC f/k/a              :<br>BUSINESS LOAN EXPRESS, LLC, et al.,  :<br>                                          :<br>                      Debtors.              :<br>                                          :<br>-----------------------------------------------------------x | NOT FOR PUBLICATION<br><br><br><br>Chapter 11<br><br><br>Case No. 08-13783 (AJG)<br><br>(Jointly Administered) |

**OPINION REGARDING CLAIM NOS. 275 AND 277 FILED
BY FRENCHTOWN CHARTER TOWNSHIP**

Before this Court is a motion by Debtors to expunge Claim Nos. 275 and 277, filed by Frenchtown Charter Township.

*I. Facts*

Frenchtown Charter Township (the "Town") assessed personal property taxes on a gas station (the "BP station") pursuant to MICH. COMP. LAWS § 211.[1]  Business Loan Center ("BLC"), a subsidiary of Ciena Capital, LLC ("Ciena"), held the mortgage of the real property on which the BP station was located.[2]  The BP station was unable to pay its personal property taxes and, as a result, BLC paid them for tax years 2005 and 2006 as part of its loan servicing obligations.[3]  On November 17, 2007 BLC foreclosed on the property.[4]  Thereafter, the property was sold and is no longer possessed by BLC.[5]

On September 30, 2008, Ciena, BLC, and a number of other debtor entities (together "Debtors") filed for Chapter 11 before this Court.  Debtors' bar date for

---

[1] *See* Debtors' Reply to Creditor Frenchtown Charter Township's Objection to Debtors' Eleventh Omnibus Objection to Personal Property Tax Claims, Docket No. 1429 [hereinafter Debtors' Reply].
[2] *See id.*
[3] *See id.*
[4] *See id.*
[5] *See id.*  The filings do not make clear to whom the property has been sold.

government claims was March 30, 2009.[6] The Town filed its two tax claims on January 20, 2009, against Ciena.[7] The first claim is for 2006 and 2007 delinquent personal property taxes on BLC's former property on Tax Parcel No. 58-07-000-773-10 in the amount of $2,505.92 and was assigned Claim No. 275.[8] The second claim is for 2007 delinquent property taxes on BLC's former property on Tax Parcel No. 58-07-020-773-00 in the amount of $4,710.70 and was assigned Claim No. 277.[9] As mentioned above, the Town filed both these claims against Ciena under the Ciena case number, instead of BLC.[10] BLC is one of the Ciena subsidiaries and one of the other debtor entities that filed on September 20, 2008.

Debtor's Notice of the Bar Date clearly states that claims filed against multiple debtor entities will be deemed to be filed against only the first-listed debtor entity.[11] Further, it states that claims filed under the jointly administered Ciena case number will be held to have been filed against only Ciena.[12] The Notice of the Bar Date also provides that "all holders of claims must identify on its proof of claim form the particular [d]ebtor [entity] against which the claim is asserted and the case number of that [d]ebtor's bankruptcy case."[13] All the debtor entities, including BLC, and their associated individual case numbers are provided in the Notice of the Bar Date.[14] The consequence

---

[6] *See* Debtors Mot. for an Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Bar Date Notice and the Form and Manner of Notice Thereof, and (C) Authorizing the Debtors to Provide Notice of the Bar Dates 5, Docket No. 214 [hereinafter Bar Date Notice] (establishing Jan. 21, 2009 as the general bar date).
[7] *See* Creditor Frenchtown Charter Township's Objection to Debtor's Eleventh Omnibus Objection to Personal Property Tax Claims 1, Docket No. 1329 [hereinafter Town's Response].
[8] *See id.*
[9] *See id.*
[10] *See* Claim No. 275 and Claim No. 277 filed on January 20, 2009 [hereinafter The Claims].
[11] *See* Bar Date Notice Exhibit 1 at 3.
[12] *See id.*
[13] *See id.*
[14] *See id.* Exhibit 1 at 8.

2

of failing to timely file in the correct form[15] is specified as that claims will be "FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES . . . AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM."[16]

On April 15, 2010, Debtors filed their Motion to Authorize the Filing of Debtors' Eleventh Omnibus Objection to Claims ("Debtors' Objection"), which scheduled the Town's tax claim to be expunged. The Town filed its Objection to Debtor's Eleventh Omnibus Objection (the "Town's Response") on May 6, 2010.[17] Debtors filed their Reply to Creditor Frenchtown Charter Township's Objection to Debtors' Eleventh Omnibus Objection (the "Debtors' Reply") on June 23, 2010.[18]

The Town asserts that it always intended to file against the correct debtor entity, to wit, BLC, and has always listed all debtor entities in its filings. The Town further contends that, pursuant to MICH. COMP. LAWS § 211.40, the tax lien obtained on the taxed personal property follows the property even if ownership transfers. As a result, BLC should be held to owe the delinquent tax amounts claimed because it was aware of the tax liability when it subsequently sold the property. Debtors respond that, in any case, the Town's claims should be disallowed because they were filed against Ciena. But if the claims are treated as timely filed against BLC, Debtors argue, the taxes are owed by the owner of the property at the time they were assessed - the BP station - and the tax lien would follow the property to the current owner. Therefore, the Town has no claim

---

[15] *See id.* Exhibit 1 (explaining which creditors must file, what they must file, when and where they must file, and specifying who does not need to file).
[16] *Id.* Exhibit 1 at 5.
[17] *See* Town's Response.
[18] *See* Debtors' Reply 3-5.

3

against BLC as (1) it was not the owner of the property at the time the tax was assessed, and (2) it no longer possesses the property subject to the lien.

*II. Discussion*

There are two issues presented by these facts: (1) whether the Town's failure to file its claims against BLC constitutes excusable neglect, and (2) if such claims were to be deemed timely filed against BLC, whether the Town's claims against BLC arising out of the personal property tax provisions of Michigan state law should be allowed.

*A. Excusable Neglect*

Debtors contend that since the Town improperly filed its claims against Ciena, rather than BLC, the claim should be disallowed. However, this Court may find that the claims are allowed against the correct entity pursuant to FED. R. BANKR. P. 9006(b)(1). In order to do so the Town must meet the standards for excusable neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) (articulating excusable neglect standard for extending time under Rule 9006). In determining whether the *Pioneer* creditor had established excusable neglect in connection with its failure to file its claim in a timely manner, the Court considered four factors: "(1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; [and] (4) whether the creditor acted in good faith." *Pioneer*, 507 U.S. at 385 (citing *In re Dix*, 95 B.R. 134 (9th Cir. 1988)) (rejecting a fifth factor from *Dix* examining whether a client should be held accountable for the actions of its counsel). The Court directed that these factors be applied flexibly and be extended to situations where the failure to file was within a creditor's control. *See Pioneer*, 507 U.S.

4

at 392. The present facts differ from those in *Pioneer* in that here the Town's filed its claims prior to the expiration of the relevant bar date, but against the incorrect debtor entity – Ciena. However, the Town now seeks to have its claims treated as timely filed against the correct debtor entity – BLC, based upon the "excusable neglect" standard under *Pioneer*.

Noting that the other three factors usually favor the party seeking an extension, the Second Circuit has relied most heavily on the third element – the reason for the delay. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 123-24 (2d Cir. 2005) (citing *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003)).

i.  *Prejudice to the Debtor*

The first *Pioneer* factor comprises three distinct elements: "(1) the 'size of the late claim in relation to the estate,' (2) 'whether a disclosure statement or plan [of reorganization] has been filed or confirmed with knowledge of the existence of the claim,' and (3) 'the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated.'" *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 101 (Bankr. S.D.N.Y. 2007) (quoting *In re Keene Corp.*, 188 B.R. 903 (Bankr. S.D.N.Y. 1995)).

Even though a small claim size does not necessarily guarantee a finding for a creditor, the size of the Town's claims is remarkably small compared to the bankruptcy estate. *See In re DPH Holdings Corp.*, No. 10 Civ. 646(SAS), slip op. 2010 WL 2633698 (S.D.N.Y. 2010) ("[B]ankruptcy courts have found prejudice to the debtor in . . . situations when the late claims were only a small percentage of the bankruptcy estate.").

5

Further, Debtors do not dispute that they had notice of the Town's claims by virtue of them having been timely filed against Ciena, an entity within the same corporate family and jointly administered in the Debtors' bankruptcy case. Further, Debtors' proposed plan of reorganization has not been confirmed, thus the Town's claims would not seriously disrupt Debtors' reorganization. For the reasons discussed, the first *Pioneer* factor favors a finding for the Town.

   *ii. Impact on Judicial Proceedings*

The second *Pioneer* factor has been found to favor the debtor when the delay is substantial. *See Enron Creditors*, 370 B.R. at 103; *see also Midland*, 419 F.3d at 128 ("[T]he lateness of a claim must be considered in the context of the proceeding as a whole."). Whether a delay is substantial is determined by examining "the degree to which, in the context of a particular proceeding, the delay 'may disrupt the judicial administration of the case.'" *Midland*, 419 F.3d at 128 (quoting *In re Infiltrator Sys., Inc.,* 241 B.R. 278, 281 (Bankr. D. Conn.1999)) (holding six-month delay from bar date for prepetition claim substantial); *see also In re Dana Corp.,* No. 06-10354, 2008 WL 2885901, at *6 (Bankr. S.D.N.Y. 2008) (holding twenty-one-month delay from bar date for prepetition claim substantial); *Enron Creditors*, 370 B.R. at 103 (Bankr. S.D.N.Y. 2007) (holding fifteen-month delay from bar date for prepetition claim substantial).

The Town filed its claims before the bar date. Thus, any impact would be associated only with allowing the claims against the correct debtor entity (BLC). Over eighteen months have passed since the claims were originally filed. However, given that Debtors have been on notice since prior to the bar date that the Town's claims existed in some capacity and no plan confirmation hearing has been scheduled before this Court, the

6

delay associated with allowing the Town's claims against BLC will not disrupt the administration of the case. Thus, the delay associated with treating the Town's claims as timely against the correct debtor entity is not substantial. This factor favors the Town.

    *iii. Bad Faith*

There is no evidence that the Town was acting in bad faith when it filed its claims against the wrong debtor entity. Therefore, the fourth *Pioneer* factor also favors the Town.

    *iv. Reason for the Delay*

Finally, turning to the third and most critical *Pioneer* factor, this Court will evaluate the reason for the Town's filing against the incorrect debtor entity. *See Enron Creditors*, 370 B.R. at 103 (citing *Pioneer*, 507 U.S. at 388) (stating that creditor "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay . . . and . . . ultimate[ly] determin[e] . . . whether equities support the conclusion of excusable neglect"). The Town has not provided any reason for the misfiling. The only statement from the Town regarding this issue was at the May 19, 2010 hearing. There the Town asserted that it in fact filed against BLC, and has included BLC in its list of debtors in all of its filings regarding this bankruptcy.

However, an examination of the claims reveals that the Town filed them against Ciena and under Ciena's case number.[19] Claim No. 277 includes a letter from the Town to the claims agent, which lists the name of the debtor as "Ciena Capital LLC f/k/a Business Loan Express, LLC." Neither the claims nor their supporting documentation

---

[19] *See* The Claims.

7

mention BLC in any capacity.[20] The Town's filing oversight in this case is particularly puzzling. From the exhibits to Town's Response, it seems the Town's previous correspondence with the Debtors was exclusively with BLC. There is no doubt that the Town knew which debtor entity it should have filed against.

Although *Pioneer* directs courts to apply excusable neglect even when the mistake was within a party's control, the Town has not provided this Court with any reason or excuse upon which to base an excusable neglect finding. *See Enron Creditors*, 370 at 103 (holding neglect inexcusable because movant failed to provide a reason). Thus, the Town has failed to present the Court with the necessary information to determine whether the relief sought under *Pioneer* should be granted. Accordingly, Debtors' Objection to Claim Nos. 275 and 277 is sustained and the claims will be disallowed against Ciena and BLC.

*B. Michigan State Tax Law*

This Court has concluded that the Town has not met the standard of excusable neglect and thus the Town's claims will not be allowed. However, in the interest of completeness, this Court will now examine whether, had the claims been treated as timely, it would have allowed the claims against BLC.

MICH. COMP. LAWS § 211.40 provides that "all taxes become a debt due to the township . . . from the owner or person otherwise assessed." In order to create a lasting lien, it states "[a]ll personal taxes . . . are also a first lien . . . on all personal property of the persons assessed . . . . The lien for those amounts shall continue until paid." The statute goes on to state that "[a] transfer of personal property assessed for taxes does not divest or destroy the lien." Michigan's real property lien provisions are similarly worded.

---

[20] *See* The Claims.

8

They provide that "[t]he amounts assessed . . . on any interest in real property shall become a lien on the real property . . . The lien for those amounts, and for all interest and charges on those amounts shall continue until paid." MICH. COMP. LAWS § 211.40. This congruency indicates that Michigan lawmakers intended for real and personal property tax liens to be treated similarly.

The Michigan tax lien framework stands apart from the structure used by some states. For example, New York uses a less discretionary system for liens held against real property. Once taxes owed to a New York tax authority are determined to be delinquent, the tax authority issues a warrant, which is followed by notice and a judgment. *See, e.g.,* N.Y. TAX LAW §§ 692, 1092. This judgment creates a lien, which is subsequently enforced through a foreclosure. *See id.* In any foreclosure of real property in New York, extant tax liens are considered expenses of the sale and must be paid out of the proceeds. *See* N.Y. REAL PROP. ACTS. § 1354; *Bank of N.Y. v. Love*, 772 N.Y.S.2d 645 (N.Y. App. Div. 1st Dep't. 2004). Any tax liens not discovered and reported to the court before it directs the referee to conduct the sale appear to no longer be held against the property. *See Phelan v. Phelan*, 538 N.Y.S.2d 827 (N.Y. App. Div. 1989) ("[T]he . . . judgment's direction that the public sale of the premises was to be 'in accordance with the prior Report of the . . . Referee', should have been read as providing that the premises were to be sold subject to the four liens set forth in the Referee's report, and recited in the . . . judgment. Instead the Referee orally announced . . . that the premises would be sold 'subject to any liens or judgments that . . . may be on the record at this time.'"). The purpose of these arrangements is to ensure that purchasers of the real property obtain a clear title. *See Wesselman v. Engel Co.*, 309 N.Y. 27, 127 N.E.2d 736, 737 (N.Y. 1955).

In contrast, Michigan seeks to enforce tax liens against subsequent transferees and does not make provision for tax liens to attach to proceeds of the sale of the property subject to the lien. *See* MICH. COMP. LAWS § 211.40.

Through examination of the Michigan statutes, it appears clear that, in Michigan, (1) taxes are owed by the owner of the personal property at the time the taxes are assessed and that owner remains liable until such taxes are paid regardless of who holds the property, and (2) the personal property tax lien on that personal property resulting from such taxes remains with any transferees or purchasers. Supreme Court of Michigan cases concur with this conclusion. *See Continental Motors Corp. v. Muskegon Twp.*, 112 N.W.2d. 429 (Mich. 1961); *In re Ever Krisp Food Prods. Co.*, 11 N.W.2d 852 (Mich. 1943). In *Ever Krisp* the court held that "[t]he property [subject to the personal property tax lien] may be distrained although found in the hands of a subsequent bona fide purchaser. Such a purchaser, although in good faith, takes the property subject to the tax lien." *Ever Krisp*, 11 N.W.2d at 857. The *Continental Motors* court held that taxing authorities in Michigan can only assess personal property taxes against either the owner of the property or the possessor of the property using it in connection with a for-profit business. *See Continental Motors*, 112 N.W.2d at 433.

Under this analysis, the BP station, as the owner of the personal property at the time the taxes were assessed, owes the personal property taxes to the Town. Further, the lien securing those tax obligations followed the personal property to the transferee to whom BLC disposed of the property. The Town acknowledges this in the Town's Objection, stating that the "personal property taxes were assessed to the property owner of the [r]eal [p]roperty" and that "any transfer of the property after the date of assessment

10

does not destroy the lien."[21] However, the Town also argues that, as BLC was aware of the existence of the tax lien at the time it conveyed the property, BLC should have paid the lien off out of the proceeds of that sale.

The Town has not provided, nor has the Court found, any statutory or case authority in support of this argument. In Michigan, "a statute imposing a lien for the payment of a tax will be strictly construed, and will not be enlarged by construction." *See Fidlin v. Collinson*, 156 N.W.2d 53, 58 fn. 6 (Mich. App. 1967) (discussing liens with the same effect as those in § 211.40); *see also In re Payless Cashways, Inc.* 230 B.R. 120, 128 (B.A.P. 8th Cir. 1999) (stating that courts generally construe mechanic's lien statutes narrowly); *In re McClung*, 327 B.R. 690 (M.D. Fla. Bankr. 2005) (construing narrowly Florida statute creating equitable liens); *Ragsdell v. Gazaway Lumber Co., Inc.*, 668 S.W.2d 60, 61 (Ark. Ct. App. 1984) (construing Arkansas materialman's lien statute narrowly). Thus, this Court would have held that the Town's tax lien attached only to the relevant personal property, pursuant to § 211.40, and not any proceeds of that property's sale. Nor is there a duty to pay the tax upon the sale of the personal property by a transferor who is not the assessed owner. Therefore, the Town did not have any valid claim against BLC arising out of these tax liabilities.

*III. Conclusion*

The Court finds that the Town (1) has not met the standard for excusable neglect under Rule 9006, and, accordingly, Claim Nos. 275 and 277 will be disallowed as untimely as against BLC, and (2) does not have a claim against Ciena. Further, even if the claims had been found to be timely as against BLC, the Court would have found that the Town had no claims against BLC under Michigan law since BLC neither owned the

---

[21] *See* Town's Response, para. 6(B), 12.

personal property at the time taxes were assessed, nor now possesses the personal property subject to the tax lien. Therefore, BLC would not have any obligation to satisfy such claims.

Debtors' counsel is to settle an order consistent with this opinion.

Dated: New York, New York
August 10, 2010

                                   *s/ Arthur J. Gonzalez*
                                   CHIEF UNITED STATES BANKRUPTCY JUDGE